WILLIAMS, Appellee,

v.

WAVES, CUTS, COLOUR & TANNING, INC., Appellant.

[Cite as *Williams v. Waves, Cuts, Colour & Tanning, Inc.* (1994), 92 Ohio App.3d 224.]

Court of Appeals of Ohio,
Hamilton County.

No. C-920928.

Decided Jan. 19, 1994.

*Strauss & Troy* and *William K. Flynn,* for appellee.

*Kenneth G. Hawley Co., L.P.A.,* and *Kenneth G. Hawley,* for appellant.

---

HILDEBRANDT, Presiding Judge.

Defendant-appellant Waves, Cuts, Colour & Tanning, Inc. ("Waves") appeals from the order of the Hamilton County Court of Common Pleas granting the motion for summary judgment filed by the plaintiff-appellee, Regina Williams ("appellee").[1] For the reasons that follow, we affirm the trial court's judgment.

---

1. Defendant Richard Ogden filed bankruptcy on October 20, 1992. In its judgment entry, the trial court dismissed appellee's complaint as to Ogden, without prejudice.

FACTS

The record discloses that Waves was an Ohio corporation and that defendant Richard Ogden ("Ogden") was one of its directors. As of March 1991, Waves' only shareholders were Ogden and Joanne Goetz, each holding three hundred seventy-five shares of stock.[2] Further, Waves owed approximately $15,000 in state, local and federal payroll taxes which it was unable to pay and for which Ogden was potentially liable.

On March 28, 1991, Ogden entered into a written agreement with the appellee [3] which provided: "I Richard Ogden have received $15,000.00 from Regina Williams which she is to be paid 6½% interest only on the total amount until it is converted into stock at approximately $297.00 per share." The notation under his signature to the document denoted Ogden as Waves' "C.E.O."

Ogden acknowledged that the purpose of the agreement was to generate funds with which to pay Waves' tax liability. Ogden referred to the funds he received from the appellee as a loan. However, he explained that because it was unlikely that he or Waves would be able to repay appellee in the near future, and because appellee was interested in becoming a partial owner, Ogden agreed to repay appellee at an unspecified time by selling her fifty shares of his stock in Waves in return for her promise to cancel the debt.

Ogden consulted his attorneys for the purpose of preparing the legal documents to transfer fifty shares of his stock to the appellee. Ogden's counsel informed him of the adverse capital-gains tax consequences of transferring his shares to appellee. Ogden was advised that the wiser course was to have Waves increase the number of its authorized shares from seven hundred fifty to one thousand. That way, Ogden and Goetz could redeem their existing shares in Waves for new shares. Appellee would also be issued new shares in return for her agreement to forgive the debt.

In July 1991, Waves, through Ogden, Goetz and counsel, sought and received authorization from the Ohio Division of Securities to issue the additional shares. See R.C. 1701.70. However, the new shares were never issued because negotiations between Ogden and appellee reached an impasse.

On April 1, 1992, appellee filed the instant complaint in which she alleged, *inter alia*, that Waves, through Ogden's execution of the March 28, 1991 document,

---

2. Goetz was not a party to the proceedings below.

3. In his affidavit, filed in the proceedings below, Ogden described appellee as a lease-operator who was interested in becoming a partial owner of Waves.

unlawfully sold her nonexempt[4] securities.[5] Appellee sought judgment against the instant defendants, jointly and severally, in the amount of $15,000, interest, costs and attorney fees. On September 24, 1992, appellee moved for the summary judgment which was granted by the trial court. In its decision, the court reasoned, *inter alia*, that the March 28, 1991 document was executed on behalf of Waves by Ogden in his capacity as chief executive officer. Further, Waves did not file a report of sale for the transaction with the Ohio Division of Securities.[6] Therefore, the transaction constituted the sale of a non-exempt security pursuant to R.C. 1707.03(O).[7] Finally, the lower court concluded that

---

4. Securities set forth in R.C. 1707.05 and transactions specified in R.C. 1707.06 must be registered with the Ohio Division of Securities. R.C. 1707.08 to 1707.11 pertain to methods of registration.

5. Under R.C. 1707.01(B), the term "security" includes a promissory note as well as other evidence of indebtedness.

6. The defendants admitted that no report of sale was filed with the division. Their position remains, however, that no report was necessary.

7. R.C. 1707.03(O) provides:
   "The sale of any equity security is exempt if all the following conditions are satisfied:
   "(1) The sale is by the issuer of the security;
   "(2) The total number of purchasers in this state of all securities issued or sold by the issuer in reliance upon this exemption during the period of one year ending with the date of the sale does not exceed ten. A sale of securities registered under sections 1707.01 to 1701.45 of the Revised Code or sold pursuant to an exemption under sections 1707.01 to 1707.45 of the Revised Code other than this exemption shall not be integrated with a sale pursuant to this exemption in computing the number of purchasers hereunder.
   "(3) No advertisement, article, notice, or other communication published in any newspaper, magazine, or similar medium, or broadcast over television or radio is used in connection with the sale, but the use of an offering circular or other communication delivered by the issuer to selected individuals does not destroy this exemption.
   "(4) The issuer reasonably believes after reasonable investigation that the purchaser is purchasing for investment.
   "(5) The aggregate commission, discount, and other remuneration, excluding legal, accounting, and printing fees, paid or given directly or indirectly does not exceed ten per cent of the initial offering price.
   "(6) Any such commission, discount, or other remuneration for sales in this state is paid or given only to dealers or salesmen registered pursuant to Chapter 1707. of the Revised Code.
   "(7) The issuer files with the division of securities not later than sixty days after the sale, a report of sale setting forth the name and address of the issuer, the total amount of the securities sold under this exemption, the number of persons to whom the securities were sold, the price at which the securities were sold, and the commissions or discounts paid or given.
   "(8) The issuer pays a filing fee of twenty-five dollars.
   "For the purposes of this division, each of the following is deemed to be a single purchaser of a security; husband and wife, a child and its parent or guardian when the parent or guardian holds the security for the benefit of the child, a corporation, a partnership, an association or other unincorporated entity, a joint-stock company, or a trust, but only if the corporation, partnership, association, entity, company, or trust was not formed for the purpose of purchasing the security.

the transaction violated R.C. 1707.44(C)(1) [8] because it involved a non-exempt security.

From the trial court's judgment, Waves brings this timely appeal in which it urges, in a single assignment of error, that the trial court erred by granting appellee's motion for summary judgment. We are unpersuaded.

Civ.R. 56(C) provides, in part:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

In *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, the court held in paragraph three of the syllabus:

"A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. (*Celotex v. Catrett* [1986], 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, approved and followed.)"

■ Waves submits several arguments in support of its assignment of error, the first of which is that the March 28, 1991 agreement was exempt from the requirement that it be registered or reported under R.C. 1707.02(G), which provides: "Commercial paper and promissory notes are exempt when they are

---

"As used in this division, 'equity security' means any stock or similar security of a corporation; or any security convertible, with or without consideration, into such a security, or carrying any warrant or right to subscribe to or purchase such a security; or any such warrant or right; or any other security that the division considers necessary or appropriate, by such rules as it may prescribe in the public interest or for the protection of investors, to treat as an equity security."

8. R.C. 1707.44(C)(1) provides:
"(C) No person shall knowingly and intentionally sell, cause to be sold, offer for sale, or cause to be offered for sale, any security which comes under any of the following descriptions:
"(1) Is not exempt under section 1707.02 of the Revised Code, nor the subject matter of one of the transactions exempted in sections 1707.03, 1707.04, and 1707.34 of the Revised Code, has not been registered by description, coordination, or qualification, and is not the subject matter of a transaction that has been registered by description[.]"

not offered directly or indirectly for sale to the public." This argument fails because contrary to Waves' contention, the record reveals merely that appellee was a member of the public.

Ohio Adm.Code 1301:6–3–02 provides:

"(C) Commercial paper; public offering

"(1) Exemption for sale of commercial paper and promissory notes as provided in section 1707.02(G) of the Revised Code, is restricted to sale to officers and directors only.

"(2) Commercial paper and promissory notes otherwise offered to existing security holders, employees, and all other natural persons are deemed to be offered to the public."

In *State v. Taubman* (1992), 78 Ohio App.3d 834, 842, 606 N.E.2d 962, 967, the court discussed the above Administrative Code provision, observing that:

"The Ohio Securities Act was adopted to prevent fraudulent exploitations through the sale of securities. *United States v. Tehan* (C.A.6, 1966), 365 F.2d 191, 194. It is reasonable to assume that the legislature did not mean to protect insiders or those with managerial responsibility when a business organization offers commercial paper and promissory notes for sale but the legislature did mean to protect all others. The rule does not contravene or impermissibly narrow the statutory exemption. Appellant contends the rule unduly restricts her right to sell promissory notes to her friends and business clients. There is no suggestion that the Ohio legislature meant to exempt friends and clients from the protective sweep of this legislation. Indeed, it meant to exempt people like the victims in this case who are most vulnerable to being exploited by persons like the appellant * * *."

As we discussed, *supra*, Ogden described appellee's position with Waves as a lease-operator. Waves has not placed of record any evidentiary material to the effect that appellee was an "insider" who was charged with managerial responsibilities so as to exclude her from the protection of the administrative provision cited above.

■ Appellant next argues that the evidence in the record demonstrates that the parties did not contemplate the sale of securities and that no sale of securities occurred to register or report. The appellant's argument is misplaced because it was the March 28, 1991 document, not shares of appellant's stock, that was required to be registered with the division. At pages 7 through 8 of Waves' brief, it is maintained that the document *sub judice* is nothing more than a promissory note which is exempt from the operation of R.C. Chapter 1707 by R.C. 1707.02(G) because the document was not offered to the public. We have previously rejected

**230**

appellant's contention that appellee's status was that of an insider. Further, as we have already noted, a promissory note constitutes a security pursuant to R.C. 1707.01(B).

■ Waves' third argument in support of the assignment is that there remains a genuine issue of material fact as to whether Ogden executed the document individually or in his capacity as chief executive officer of Waves. Assuming for purposes of this discussion that Ogden's execution of the document was not authorized by Waves, we hold this argument to be feckless because the record reveals that the corporation subsequently ratified the document.

In *Campbell v. Hospitality Motor Inns, Inc.* (1986), 24 Ohio St.3d 54, 56, 24 OBR 135, 137, 493 N.E.2d 239, 240–241, the court stated:

"Directors and officers are agents of the corporation and can bind their principal, the corporation, by their acts. *Kimball v. Kimball Bros., Inc.* (1944), 143 Ohio St. 500 [28 O.O. 425, 56 N.E.2d 60]. In *Kimball, supra,* at 506–507 [28 O.O. at 427–428, 56 N.E.2d at 62–63], this court also stated that * * * 'a corporation * * * may become bound by acquiescing in and ratifying an unauthorized act done on its behalf by its agent.'"

As we observed above, in July 1991, Waves sought and received authorization from the division to issue additional shares of stock. This authorization was clearly done in contemplation of treating appellee's $15,000 investment as paid-in capital to Waves.

Based upon our review of the record, we hold that the March 28, 1991 document was ratified by Waves. Therefore, Waves became legally obligated to register the document in accordance with R.C. Chapter 1707.

■ Waves' next argument is that a genuine issue of material fact exists concerning whether the document was exempted from registration by R.C. 1707.03(B), 1707.03(G)(1) or 1707.03(G)(2). We disagree.

The above provisions prescribe respectively as follows:

"A sale of securities made by or on behalf of a bona fide owner, neither the issuer nor a dealer, is exempt, if such sale is made in good faith and not for the purpose of avoiding sections 1707.01 to 1707.45 of the Revised Code, and is not made in the course of repeated and successive transactions of a similar character. Any sale of securities over a stock exchange which is lawfully conducted in this state and regularly open for public patronage and which has been established and operated for a period of at least five years prior to such sale at a commission not exceeding the commission regularly charged in such transactions is also exempt.

" * * *

"The giving of any conversion right with, or on account of the purchase of, any security which is exempt, is the subject matter of an exempt transaction, has been registered by description, by coordination, or by qualification, or is the subject matter of a transaction which has been registered by description, is exempt.

"The giving of any subscription right, warrant, or option to purchase a security or right to receive a security upon exchange, which security is exempt at the time such right, warrant, or option to purchase or right to receive is given, is the subject matter of an exempt transaction, is registered by description, by coordination, or by qualification, or is the subject matter of a transaction which has been registered by description, is exempt."

Appellant maintains in its brief that "[i]n any event, and no matter how the transaction is construed, it was either an issue of an exempt security (if it is a promissory note), or a transaction which is exempt under the preceding statutory sections. Because the sale of a security by Ogden, had it taken place, would have been an exempt transaction under O.R.C. Sec. 1707.03(B), the giving of any conversion right, subscription right, option to purchase or right to receive a security upon exchange, would have been the giving of a right to a security which is the subject matter of an exempt transaction, *i.e.*, the sale of stock by Ogden to Williams."

In light of our disposition of Waves' previous argument in support of the instant assignment of error that there is a genuine issue of fact as to the capacity in which Ogden executed the document, this argument is without merit.

Appellant's final argument in support of the assignment is that Waves was not a party to the agreement entered into on March 28, 1991, and, also, that the shares of stock were never issued. Therefore, appellant was not required to register either transaction. This argument is subsumed in our disposition of the foregoing arguments.

For the foregoing reasons, we hold that the trial court did not err in entering summary judgment in favor of the appellee. Appellant's single assignment of error is overruled and the judgment of the court of common pleas is affirmed.

*Judgment affirmed.*

KLUSMEIER, P.J., and SHANNON, J., concur.