**[This decision has been published in *Ohio Official Reports* at 97 Ohio St.3d 473.]**

GUTMANN ET AL., RESPONDENTS, *v*. FELDMAN ET AL., PETITIONERS.

[Cite as *Gutmann v. Feldman*, 2002-Ohio-6721.]

*Securities—Oral contract cannot constitute a "security" as that term is defined in R.C. 1707.01(B).*

(No. 2002-0146—Submitted September 25, 2002—Decided December 18, 2002.)

ON ORDER from the United States District Court for the Southern District of Ohio, Western Division, Certifying a Question of State Law, No. C-3-01-049.

————————————

SYLLABUS OF THE COURT

An oral contract cannot constitute a "security" as the General Assembly has defined that term in R.C. 1707.01(B).

————————————

COOK, J.

{¶1} Pursuant to S.Ct.Prac.R. XVIII, the United States District Court for the Southern District of Ohio, Western Division, has certified to this court the following question of state law:

{¶2} "Can an oral contract constitute a 'security' as that term is defined in Ohio Revised Code § 1707.01(B)?"

{¶3} This court answers "no."

I

{¶4} In its certification order, the district court set forth the following description of the federal action:

{¶5} "The plaintiffs [respondents here] allege that the defendants [petitioners here] induced them to invest funds in a series of business opportunities, in which the defendants would advance the plaintiffs' funds to a certain third party who would use the funds to purchase goods at a discount and then resell the goods

at a profit.  This profit would be used to pay back to the plaintiffs their principal plus profit.  The plaintiffs allege that, contrary to the defendants' representations to them, there were no such business opportunities, the defendants had not performed adequate due diligence on any such opportunities, the defendants did not monitor the investment transactions, and the third party was not conducting a prospering and expanding business.  The plaintiffs allege that they suffered significant financial losses as a result of the defendants' conduct.

**{¶6}** "* * *

**{¶7}** "The plaintiffs filed the instant proceeding in the certifying Court on January 31, 2001.  They seek to recover compensatory and punitive damages for the allegedly unlawful conduct of the defendants.

**{¶8}** "* * *

**{¶9}** "Counts Five, Six, and Seven of the plaintiffs' complaint allege that the defendants' conduct violated Ohio securities law.  The defendants have moved to dismiss those counts, arguing that they never sold any written certificates or instruments to the plaintiffs and therefore did not sell 'securities' within the meaning of Ohio's securities laws.

**{¶10}** "The certified question appears to be one for which there is no controlling precedent in the decisions of the Ohio Supreme Court.  It is a question of determinative importance in this litigation.  It is not fact-specific."

II

**{¶11}** We look to the text of R.C. 1707.01(B) that defines "security" to decide whether an oral agreement can qualify as one.  The petitioners point us to the clause " '[s]ecurity' means any certificate or instrument" in the first sentence of the text as excluding oral contracts.  The respondents counter that because the General Assembly listed "any investment contract" among examples of securities in the second sentence of the text, oral contracts qualify as securities.

**{¶12}** The entire subsection reads as follows:

**{¶13}** " '*Security' means any certificate or instrument* that represents title to or interest in, or is secured by any lien or charge upon, the capital, assets, profits, property, or credit of any person or of any public or governmental body, subdivision, or agency. *It includes* shares of stock, certificates for shares of stock, membership interests in limited liability companies, voting-trust certificates, warrants and options to purchase securities, subscription rights, interim receipts, interim certificates, promissory notes, all forms of commercial paper, evidences of indebtedness, bonds, debentures, land trust certificates, fee certificates, leasehold certificates, syndicate certificates, endowment certificates, certificates or written instruments in or under profit-sharing or participation agreements or in or under oil, gas, or mining leases, or certificates or written instruments of any interest in or under the same, receipts evidencing preorganization or reorganization subscriptions, preorganization certificates, reorganization certificates, certificates evidencing an interest in any trust or pretended trust, *any investment contract*, any life settlement interest, any instrument evidencing a promise or an agreement to pay money, warehouse receipts for intoxicating liquor, and the currency of any government other than those of the United States and Canada, but sections 1707.01 to 1707.45 of the Revised Code do not apply to the sale of real estate." (Emphasis added.) Id.

**{¶14}** In past decisions we have explained that when addressing issues of statutory meaning, "[l]egislative intent is the preeminent consideration in construing a statute. To determine the legislative intent, we first review the statutory language. In reviewing the statutory language, we accord the words used their usual, normal, or customary meaning." (Citations omitted.) *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections* (2000), 88 Ohio St.3d 182, 184, 724 N.E.2d 771. See, also, *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1997), 77 Ohio St.3d 338, 340, 673 N.E.2d 1351; *State ex rel. Hawkins v. Pickaway Cty. Bd. of Elections* (1996), 75 Ohio St.3d 275, 277, 662 N.E.2d 17; R.C. 1.42. Both

"certificate" and "instrument" usually and customarily mean some form of writing. A "certificate" is "[a] *document* in which a fact is formally attested" or "[a] *document* certifying the bearer's status or authorization to act in a specified way." (Emphasis added.) Black's Law Dictionary (7th Ed.1999) 218. An "instrument" is "[a] *written legal document* that defines rights, duties, entitlements, or liabilities." (Emphasis added.) Id. at 801. And a "document" is "[s]omething *tangible* on which words, symbols, or marks are recorded." (Emphasis added.) Id. at 498.

{¶15} The respondents argue, however, that because the General Assembly employed examples in the second sentence to *elaborate* on the definition in the first sentence, the "certificate or instrument" requirement does not constrain the broad range of securities embraced by the phrase "any investment contract." But the structure and wording of the statute belie this argument. We adopt instead the rationale of the petitioners that the first clause of the first sentence establishes the core definition of "security" and that the succeeding list of examples cannot be read to expand that core definition. See, e.g., *Emery v. So-Soft of Ohio, Inc.* (1964), 94 Ohio Law Abs. 357, 366, 199 N.E.2d 120, 124-125 ("In determining whether a certificate or instrument comprises one or more of the various classifications of securities set out in the latter provisions of Section 1707.01(B), Revised Code, that portion must be interpreted with an eye to the first sentence"). We interpret the list of examples in the second sentence as providing specific examples of what *forms* such securities, as defined by the first sentence, may take. Accordingly, the inclusion of the example "any investment contract" merely confirms that the definition includes "any certificate or instrument that represents" "any investment contract."

{¶16} The respondents also argue that petitioners' view fails to account for the repeated use of "written," "certificate," and "instruments" in the list of examples. If the drafters intended the first sentence to overlay the examples, the respondents argue, it is redundant to include those words again in the list of

examples itself. We reject this position because it reads the list of examples as taking no meaning from the first sentence.

{¶17} Further, the respondents' reading of R.C. 1707.01(B) gains no additional traction with their argument that because federal law does not limit securities to written certificates and instruments, Ohio's "broader" securities law follows suit. The statutes upon which the respondents rely for the federal definitions of "security"[1] do not include Ohio's core definition. And that core definition is what decides this issue. Compare R.C. 1707.01(B) with Sections 77b(a)(1) and 78c(a)(10), Title 15, U.S.Code. Although federal securities law can inform Ohio securities law, see *In re Columbus Skyline Securities, Inc.* (1996), 74 Ohio St.3d 495, 498, 660 N.E.2d 427, we do not consult federal law in the absence of ambiguity and analogous statutes or statutory reference to federal law.

---

1. **{¶a}** Both federal statutes contain a broader definition of a security that, unlike Ohio's statute, does not confine a security to a written document. Section 77b(a)(1), Title 15, U.S. Code provides:

**{¶b}** "The term 'security' means any note, stock, treasury stock, security future, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing."

**{¶c}** Section 78c(a)(10), Title 15, U.S. Code provides:

**{¶d}** "The term 'security' means any note, stock, treasury stock, security future, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a 'security'; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited."

**{¶18}** Likewise, we discount the respondents' third argument, which urges the court to weigh the public policy in favor of treating oral contracts as securities. Given that we view the statutory language and the structure of R.C. 1707.01(B) as dictating our decision, the statute is not ambiguous and we have no cause to consider the consequences of a particular construction. See R.C. 1.49.

III

**{¶19}** For the foregoing reasons, we advise the federal district court that an oral contract cannot constitute a "security" as the General Assembly has defined that term in R.C. 1707.01(B).

Decision accordingly.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

LUNDBERG STRATTON, J., dissents.

_____

**LUNDBERG STRATTON, J., dissenting.**

**{¶20}** I believe that an oral investment contract is a security as that term is defined in R.C. 1707.01(B). Therefore, I respectfully dissent.

**{¶21}** The majority holds that the first sentence of R.C. 1707.01(B) — " 'Security' means any *certificate* or *instrument* that represents title to or interest in, or is secured by any lien or charge upon, the capital, assets, profits, property, or credit of any person or of any public or governmental body, subdivision, or agency"—indicates that all securities listed in R.C. 1707.01(B) must be in writing. (Emphasis added.) The language of R.C. 1707.01(B) belies that conclusion. For example, the list includes "shares of stock" and "*certificates* for shares of stock," "subscription rights" and "*receipts* evidencing * * * subscriptions," and "membership in limited liability companies" and "*certificates* or *written instruments* in or under profit-sharing or participation agreements." The General Assembly's use of the words "written," "certificates," and "instruments" to describe certain securities while not using them to describe others indicates its

deliberate inclusion of some securities that are required to be in writing and some that are not. If the opening definition required all items to be in writing, there would be no need to modify certain examples as needing to be written. Specifically, there is no indication that "investment contracts" must be in writing. On the contrary, R.C. 1707.01(B) includes "*any* investment contract." (Emphasis added.)

{¶22} The majority's interpretation of R.C. 1707.01(B) ignores the word "any" as it is used to describe the term "investment contract" therein. In matters of construction "it is the duty of this court to give effect to the words used [in a statute], not to delete words used or to insert words not used." *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 524 N.E.2d 441, paragraph three of the syllabus. The word "any" is defined as "one indifferently out of more than two." Webster's Third International Dictionary (1986) 97; see, also, *Motor Cargo, Inc. v. Richfield Twp. Bd. of Trustees* (1953), 52 O.O. 257, 259, 117 N.E.2d 224 (the word "any" means "every" or "all"). Thus, I believe that the General Assembly's use of the word "any" to modify the term "investment contract" indicates that the term "investment contract" is not limited to written contracts only, but includes oral contracts as well.

{¶23} Finally, I believe that the purpose of the General Assembly also indicates that it intended the term "any investment contract" to include oral investment contracts. The purpose of the Ohio Securities Act is to protect the public from fraudulent investments. *In re Columbus Skyline Securities, Inc.* (1996), 74 Ohio St.3d 495, 498, 660 N.E.2d 427. To hold that an oral investment transaction is not a security and thus not covered by the Securities Act merely because of its form defeats the purpose of protecting the public. I do not believe that the General Assembly meant to permit scam artists to circumvent the securities law by keeping their offer in oral form only.

{¶24} Accordingly, I believe that an oral investment contract is a security within the definition of R.C. 1707.01(B). Therefore, I respectfully dissent.

_____

Squire, Sanders & Dempsey, L.L.P., Mark J. Ruehlmann, Gregory A. Ruehlmann and Pierre H. Bergeron, for respondents.

Vorys, Sater, Seymour & Pease, L.L.P., Glenn V. Whitaker and Phillip J. Smith; and Coolidge, Wall, Womsley & Lombard and Roger J. Makley, for petitioners.

Betty D. Montgomery, Attorney General, David M. Gormley, State Solicitor, Michael R. Gladman and Robert L. Strayer, Assistant Solicitors, as amicus curiae in favor of respondents.

_____