PERRYSBURG TOWNSHIP, APPELLANT AND CROSS-APPELLEE, *v.* CITY OF ROSSFORD ET AL.; ROSSFORD ARENA AMPHITHEATER AUTHORITY, APPELLEE AND CROSS-APPELLANT.

[Cite as *Perrysburg Twp. v. Rossford,*
103 Ohio St.3d 79, 2004-Ohio-4362.]

(No. 2002–2025—Submitted November 18, 2003—Decided September 8, 2004.)

**Pfeifer, J.**

{¶ 1} The issue in this case is whether an instrument providing an unconditional promise to pay a specified sum of money on a date certain can be a "security" pursuant to R.C. 1707.01(B). To determine whether a particular promissory note is a security, we adopt the test set forth in *Reves v. Ernst & Young* (1990), 494 U.S. 56, 66–67, 110 S.Ct. 945, 108 L.Ed.2d 47. Applying this test to the facts stated in Perrysburg Township's complaint, we conclude that Perrysburg Township may be able to prove that the note in this case is a security, and, therefore, we affirm the judgment of the court of appeals on that issue.

{¶ 2} In 1999, the city of Rossford passed an ordinance authorizing and instructing its law director to establish Rossford Arena Amphitheater Authority ("RAAA"), a nonprofit corporation, to finance, construct, own, operate, and maintain a public sports arena and amphitheater. Mark Zuchowski, the mayor of Rossford, was named president of RAAA.

{¶ 3} On May 17 and June 29, 1999, Zuchowski attended regularly scheduled meetings of appellant and cross-appellee, Perrysburg Township, and directly solicited Perrysburg Township to contribute public funds toward the arena project. On June 29, 1999, Zuchowski, on behalf of RAAA, entered into an agreement with Perrysburg Township. Under the terms of the agreement, Perrysburg Township agreed to contribute $5 million to RAAA, and RAAA was

to repay the contribution, plus eight percent interest, over two years. The sports arena and amphitheater were never built, and RAAA defaulted on the agreement.

{¶ 4} Perrysburg Township sued RAAA, Rossford, and Zuchowski, claiming, among other things, securities violations. The trial court dismissed the securities-violations claims under Civ.R. 12(B)(6), holding that the note involved was not a security under R.C. 1707.01(B). Perrysburg Township appealed, and the court of appeals reversed the trial court's judgment dismissing the securities-violations claims against RAAA. Even though Perrysburg Township was successful in having the trial court's dismissal of its securities-violations claims against RAAA reversed, it appealed from the court of appeals' judgment on that issue because it did not agree with the court's reasoning. RAAA cross-appealed from the court of appeals' judgment. The cause is now before the court upon the acceptance of a discretionary appeal and cross-appeal.

{¶ 5} An order granting a Civ.R. 12(B)(6) motion to dismiss is subject to de novo review. See *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶ 4–5. In reviewing whether a motion to dismiss should be granted, we accept as true all factual allegations in the complaint. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753.

{¶ 6} At the time the note in question was executed, R.C. 1707.01(B) defined "security" as "any certificate or instrument that represents title to or interest in, or is secured by any lien or charge upon, the capital, assets, profits, property, or credit of any person or of any public or governmental body, subdivision, or agency. It includes * * * promissory notes, all forms of commercial paper, evidences of indebtedness, bonds, debentures, * * * [and] any instrument evidencing a promise or an agreement to pay money * * *." Am.Sub.H.B. No. 695, 147 Ohio Laws, Part III, 5380, 5381.

{¶ 7} Critical to resolving the issue in this case is determining the purpose of, the second sentence of the definition. Did the General Assembly intend the second sentence of the definition to expand upon the first sentence, or did it intend the second sentence to be restricted by the limitations in the first sentence? If, as we stated in dicta in *Gutmann v. Feldman*, 97 Ohio St.3d 473, 2002-Ohio-6721, 780 N.E.2d 562, ¶ 15, we "interpret the list of examples in the second sentence as providing specific examples of what *forms* such securities, as defined by the first sentence, may take," then the second sentence is surplusage. (Emphasis sic.) Instead, we conclude that the second sentence is substantive. In interpreting statutes, "it is the duty of this court to give effect to the words used, not to delete words used or to insert words not used." *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 524 N.E.2d 441, paragraph three of the syllabus. If the General Assembly had intended the second sentence to be a mere list of certificates and instruments that may be securities, it would have

said so directly, and to reach that conclusion we would have to "insert words not used."

{¶ 8} Instead, the General Assembly began the second sentence with the words "It includes." The pronoun "it" refers to "security." Thus, the sentence means, "['Security'] includes * * * promissory notes, all forms of commercial paper, evidences of indebtedness, bonds, debentures, * * * [and] any instrument evidencing a promise or an agreement to pay money * * *." See *Williams v. Waves, Cuts, Colour & Tanning, Inc.* (1994), 92 Ohio App.3d 224, 229–230, 634 N.E.2d 692. Accordingly, we conclude that the first sentence of R.C. 1707.01(B) provides the general definition of a security, which can be applied to any certificate or instrument to determine whether it is a security, and the second sentence provides a list of certificates and instruments that are presumptively securities.[1]

{¶ 9} "The Ohio Securities Act, generally referred to as Ohio Blue Sky Law, was adopted on July 22, 1929 to prevent the fraudulent exploitation of the investing public through the sale of securities." *In re Columbus Skyline Securities, Inc.* (1996), 74 Ohio St.3d 495, 498, 660 N.E.2d 427. This goal is best accomplished through a broad definition of "securities." Id. See, also, *Reves*, 494 U.S. at 60–61, 110 S.Ct. 945, 108 L.Ed.2d 47; *Securities & Exchange Comm. v. W.J. Howey Co.* (1946), 328 U.S. 293, 298–299, 66 S.Ct. 1100, 90 L.Ed. 1244 (definitions under securities act should be flexible rather than static "to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits").

{¶ 10} We agree with the court of appeals' conclusion that the agreement in this case is a promissory note because it is an instrument containing the written promise of RAAA to repay Perrysburg Township the definite sum of $5 million plus eight percent interest per annum. See Black's Law Dictionary (7th Ed.1999) 1085–1086. Because the agreement is a promissory note, which is one of the items listed in the second sentence of R.C. 1707.01(B), it is presumptively a security.

{¶ 11} To determine whether a particular note is a security, we adopt the test set forth in *Reves*, 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47. The *Reves* test has been increasingly adopted by our sister states. Kenneth L. MacRitchie, Is a Note a "Security"?: Current Tests Under State Law (2001), 46 S.D.L.Rev. 369, 380–387. Adoption of this test fills a gap in Ohio law and promotes uniformity in securities law. See *Columbus Skyline Securities*, 74 Ohio St.3d at 499, 660 N.E.2d 427.

---

1. The General Assembly does not often use this two-sentence approach to define terms. See R.C. 307.041(A), 2935.29, 3733.01(L),and 4779.01(I).

{¶ 12} The *Reves* test begins with "a presumption that every note is a security." *Reves*, 494 U.S. at 66, 110 S.Ct. 945, 108 L.Ed.2d 47. This presumption is consistent with our holding that the items listed in the second sentence of R.C. 1707.01(B) are presumed to be securities. The *Reves* test next recognizes that certain instruments that are commonly called "notes" are not securities. The "types of notes that are not 'securities' include 'the note delivered in consumer financing, the note secured by a mortgage on a home, the short-term note secured by a lien on a small business or some of its assets, the note evidencing a "character" loan to a bank customer, short-term notes secured by an assignment of accounts receivable, or a note which simply formalizes an open-account debt incurred in the ordinary course of business (particularly if, as in the case of the customer of a broker, it is collateralized).' " *Reves*, 494 U.S. at 65, 110 S.Ct. 945, 108 L.Ed.2d 47, quoting *Exchange Natl. Bank of Chicago v. Touche, Ross & Co.* (C.A.2, 1976), 544 F.2d 1126, 1138. The note in this case is not one of these exceptions.

{¶ 13} Finally, the *Reves* test uses the family-resemblance test to determine whether the note in question closely resembles the notes from the above list that are not securities. *Reves*, 494 U.S. at 66–67, 110 S.Ct. 945, 108 L.Ed.2d 47. This case-by-case determination is consistent with our preference to avoid "an all-inclusive definition" of security. *State v. Silberberg* (1956), 166 Ohio St. 101, 104, 1 O.O.2d 221, 139 N.E.2d 342.

{¶ 14} The family-resemblance test is a four-part test, designed to ascertain the economic realities of the instrument in question. First, the transaction is examined to determine the motivations of the parties entering into the agreement. Second, the plan of distribution of the instrument is examined. Third, the reasonable expectations of the investing public are considered. And finally, it is determined whether there are any factors that reduce the risk of the instrument, thereby rendering securities protections unnecessary. Reves, 494 U.S. at 66–67, 110 S.Ct. 945, 108 L.Ed.2d 47.

{¶ 15} We now apply the four-part family-resemblance test to the note in this case. Under the first factor, we examine the motivations of the parties involved. When the motivations are investment, the note appears to be a security; when the motivations are commercial, the note appears to be a nonsecurity. *Pollack v. Laidlaw Holdings, Inc.* (C.A.2, 1994), 27 F.3d 808, 812; *Reves*, 494 U.S. at 66, 110 S.Ct. 945, 108 L.Ed.2d 47. In this case, RAAA entered into the agreement to fund the construction of the sports arena and amphitheater, so its motivations were commercial. By contrast, Perrysburg Township entered into the agreement as an investment. Consequently, this factor does not help us to determine whether the note is a security. See *Bass v. Janney Montgomery Scott, Inc.* (C.A.6, 2000), 210 F.3d 577, 585 ("the first factor is a washout, since the

motivation prompting the transaction on Technigen's end is one typical in commercial loan transactions, that is, an effort to raise interim funds to launch a new enterprise, but from Bass's perspective looks more like a transaction for profit").

{¶ 16} The second factor, the plan of distribution, indicates that the note is not a security. When there is " 'common trading for speculation or investment,' " a note is more likely to be a security. *Reves,* 494 U.S. at 66, 110 S.Ct. 945, 108 L.Ed.2d 47, quoting *Securities & Exchange Comm. v. C.M. Joiner Leasing Corp.* (1943), 320 U.S. 344, 351, 64 S.Ct. 120, 88 L.Ed. 88. Unique agreements, negotiated one-on-one between sophisticated entities, are not often securities. *Marine Bank v. Weaver* (1982), 455 U.S. 551, 560, 102 S.Ct. 1220, 71 L.Ed.2d 409. In this case, there is no evidence that the note was to be commonly traded, and it is clear that it was a private agreement between two sophisticated entities.

{¶ 17} The third factor of the test, the reasonable expectations of the trading public, falls in favor of the note's being a security. The question to ask here is what a reasonable member of the public would have believed, not what Perrysburg Township believed. See *McNabb v. Securities & Exchange Comm.* (C.A.9, 2002), 298 F.3d 1126, 1132. Taking the assertions in Perrysburg Township's complaint as true, Zuchowski called the note an "investment." This would have led a reasonable member of the public to believe that the note was an investment.

{¶ 18} Finally, the lack of risk-reducing factors suggests that the note was a security. When there are other protections that reduce the risk of an instrument, the application of securities protections is unnecessary. *Reves,* 494 U.S. at 67, 110 S.Ct. 945, 108 L.Ed.2d 47. In this case, Perrysburg Township is not protected by any other regulatory scheme. Furthermore, the note is uncollateralized and uninsured.

{¶ 19} In this case, the family-resemblance test does not establish that the note closely resembles notes that are not securities; therefore, the presumption that the note is a security holds. Accordingly, the Civ.R. 12(B)(6) motion should not have been granted. We affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., GORMAN, F.E. SWEENEY, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

ROBERT H. GORMAN, J., of the First Appellate District, sitting for RESNICK, J.

---

John P. Donahue; Roetzel & Andress and Thomas S. Zaremba, for appellant and cross-appellee.

Shumaker, Loop & Kendrick, L.L.P., Peter R. Silverman, Mark D. Wagoner Jr. and Dana R. Ewing, for appellee and cross-appellant.

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, Stephen P. Carney, Senior Deputy Solicitor, Peter M. Thomas and Michael R. Gladman, Assistant Solicitors, for amicus curiae, Attorney General of Ohio.

