[Cite as *Miller v. Bennett*, 2014-Ohio-2460.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

JOHN MILLER

    Appellant

    v.

ROCHELLE BENNETT

    Defendant

and

US BANK

    Appellee

C.A. No.      13CA010336

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.     10CV168938

DECISION AND JOURNAL ENTRY

Dated: June 9, 2014

HENSAL, Presiding Judge.

{¶1} John Miller appeals a judgment of the Lorain County Court of Common Pleas that granted U.S. Bank's motion to dismiss his complaint. For the reasons that follow, this Court reverses.

I.

{¶2} Mr. Miller, doing business as Miller Plumbing, runs a sole-proprietorship plumbing business out of his home in Lorain, Ohio. In 2006, he hired his niece Rochelle Bennett to be his bookkeeper and gave her authority to make bank deposits and write checks for him. According to Mr. Miller, after he hired Ms. Bennett, she opened an account at U.S. Bank in her own name and indicated that she was doing business as Miller Plumbing. Mr. Miller did not

authorize her to open the account and has never been a customer of U.S. Bank.  Ms. Bennett subsequently began depositing checks that Mr. Miller's customers had written to "Miller Plumbing" to the U.S. Bank account and drawing the funds for her personal use.   By the time Mr. Miller discovered his niece's scheme, she had stolen approximately $100,000 from him.

**{¶3}**    Mr. Miller sued his niece, alleging fraud, conversion, and theft.  He also sued U.S. Bank, alleging that it negligently allowed Ms. Bennett to open an imposter account and conduct fraudulent activities from it.  After Ms. Bennett failed to file an answer, the trial court entered default judgment against her.  U.S. Bank moved to dismiss Mr. Miller's claims under Civil Rule 12(B)(6), arguing that he failed to state a claim against it.  The trial court twice allowed Mr. Miller to amend his complaint and eventually referred U.S. Bank's motion to a magistrate. Following a hearing, the magistrate recommended that U.S. Bank's motion be granted.  The magistrate reasoned that, because Mr. Miller was not a customer of U.S. Bank, it did not owe him a duty.  He, therefore, could not establish one of the prongs of a negligence claim. Mr. Miller timely objected to the magistrate's decision, but the trial court overruled his objections and adopted the decision.   Mr. Miller has appealed, assigning as error that the trial court incorrectly granted the bank's motion to dismiss.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN GRANTING A CIVIL RULE 12(B)(6) MOTION TO DISMISS APPELLANT'S SECOND AMENDED COMPLAINT, WHERE IT MUST APPEAR BEYOND DOUBT THAT THE PLAINTIFF CAN PROVE NO SET OF FACTS IN SUPPORT OF THE CLAIM THAT WOULD ENTITLE THE APPELLEE TO THE RELIEF SOUGHT, IN REGARD TO WHETHER U.S. BANK FAILED TO COMPLY WITH THEIR STATUTORILY MANDATED DUTY TO EXERCISE ORDINARY CARE FOR PERSONS WHO WILL BEAR A LOSS, SUCH AS THE APPELLANT, IF THEY DO NOT ADHERE TO THEIR STATUTORILY IMPOSED DUTY TO ADHERE TO REASONABLE BANKING PROCEDURE.

{¶4} This Court reviews the dismissal of a complaint under Civil Rule 12(B)(6) de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5. When reviewing whether a motion to dismiss should have been granted, this Court must accept as true all factual allegations in the complaint and all reasonable inferences must be drawn in favor of the nonmoving party. *Id*. For a defendant "[t]o prevail on a Civ.R. 12(B)(6) motion to dismiss, it must appear on the face of the complaint that the plaintiff cannot prove any set of facts that would entitle him to recover." *Raub v. Garwood*, 9th Dist. Summit No. 22210, 2005-Ohio-1279, ¶ 4.

{¶5} "To establish actionable negligence, one must show in addition to the existence of a duty, a breach of that duty and injury resulting proximately therefrom." *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989). "The existence of a duty in a negligence action is a question of law for the court to determine." *Id*. "There is no formula for ascertaining whether a duty exists." *Id*. "Typically, a duty may be established by common law, legislative enactment, or by the particular facts and circumstances of the case." *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565 (1998).

{¶6} Mr. Miller admits that, because he was not a customer of U.S. Bank, it ordinarily would not have owed him a duty of care. He argues that, because of its "commercially outrageous conduct" in this case, however, it owed him a duty under Revised Code 1303.47(B). Section 1303.47(B) provides:

> For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert with the employee makes a fraudulent indorsement of the instrument, the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is made in the name of that person. If the person paying the instrument or taking it for value or for collection

fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

Section 1303.47(B) codifies Section 3-405 of the Uniform Commercial Code. According to the official comments for Section 3-405:

1. Section 3-405 is addressed to fraudulent indorsements made by an employee with respect to instruments with respect to which the employer has given responsibility to the employee. It covers two categories of fraudulent indorsements: [I]ndorsements made in the name of the employer to instruments payable to the employer and indorsements made in the name of payees of instruments issued by the employer. This section applies to instruments generally but normally the instrument will be a check. Section 3-405 adopts the principle that the risk of loss for fraudulent indorsements by employees who are entrusted with responsibility with respect to checks should fall on the employer rather than the bank that takes the check or pays it, if the bank was not negligent in the transaction. Section 3-405 is based on the belief that the employer is in a far better position to avoid the loss by care in choosing employees, in supervising them, and in adopting other measures to prevent forged indorsements on instruments payable to the employer or fraud in the issuance of instruments in the name of the employer. If the bank failed to exercise ordinary care, subsection (b) allows the employer to shift loss to the bank to the extent the bank's failure to exercise ordinary care contributed to the loss."

In *Tricon Roofing, Inc. v. Gabor's Dunham Fast Check, Inc.*, 8th Dist. Cuyahoga No. 82192, 2003-Ohio-3027, the Eighth District Court of Appeals explained that, under Section 1303.47(B), "[t]hird parties may be held liable for an employee's fraudulent endorsement [of a check] if they fail to 'exercise ordinary care' in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud." *Id*. at ¶ 20. "Ordinary care" means "observance of the reasonable commercial standards that are prevailing in the area in which the person is located with respect to the business in which the person is engaged." R.C. 1303.01(A)(9). According to Mr. Miller, U.S. Bank failed to exercise ordinary care when it allowed his niece to open an imposter account and deposit his customer's checks into it.

{¶7} U.S. Bank argues that Mr. Miller failed to state a claim under Section 1303.47(B) because he did not specifically cite the section in his complaint. Mr. Miller alleged in his complaint only that U.S. Bank "had a * * * statutory duty to conduct itself in a commercially reasonable manner * * * consistent with Ohio law, which it failed to do * * *." In *Vandiver v. Morgan Adhesive Co.*, 126 Ohio App.3d 634, 642 (9th. Dist.1998), this Court explained, however, that "[t]he fact that [a plaintiff] did not provide * * * specific sections in his complaint is not fatal to his cause, as notice pleading requires only a short, plain statement of the claim." We, therefore, reject U.S. Bank's argument that Mr. Miller was required to state in his complaint that his claim is under Section 1303.47(B).

{¶8} U.S. Bank also argues that Section 1303.47(B) does not create a duty, citing *Promissor, Inc. v. Branch Bank & Trust Co.*, N.D.Ga. No. 1:08-CV-1704-BBM, 2008 WL 5549451 (Oct. 31, 2008). Although the court in *Promissor* analyzed a Georgia statute that adopted Section 3-405 of the Uniform Commercial Code, we do not find its analysis persuasive. The federal district court based its decision largely on the fact that a Georgia state appellate court had determined that the Georgia statute placed the risk of loss upon employers instead of banks. *Id*. at *6, citing *Northbrook Prop. & Cas. Ins. Co. v. Citizens & S. Nat'l Bank*, 184 Ga.App. 326, 327 (1987). At the time that the state appellate court rendered its decision, however, the Georgia statute did not contain language providing that a "person bearing the loss may recover from the person failing to exercise ordinary care * * *." Ga.Code Ann. § 11-3-405(b). That language from Section 3-405 of the Uniform Commercial Code was not added to the Georgia statute until 1996. In *Promissor*, the federal district court did not explain why the state court decision continued to control even though the language of the statute had been amended. For similar

reason, we do not find persuasive the other cases that U.S. Bank has cited in which the courts did not apply the current version of the Uniform Commercial Code.

{¶9}   U.S. Bank also argues that Mr. Miller has incorrectly relied on the Eighth District Court of Appeals' decision in *Tricon Roofing*, noting that it did not involve an allegation by an employer that an employee opened an imposter account at a third party bank.   Opening an imposter account, however, is not the focus of Section 1303.47(B).   In fact, it is debatable whether the mere opening of an imposter account is actionable under the section.   *See Auto-Owners Ins. Co. v. Bank One*, 879 N.E.2d 1086, 1089-1090 (Ind.2008) ("[Section] 405(b) makes no mention of a bank's responsibilities when opening an account for a new customer.   Rather, subsection (b) requires ordinary care from a bank in the 'paying' or 'taking' of an instrument. * * * This is not to say that the circumstances of opening an account could never play a role in whether a bank has used ordinary care in paying or taking a check.").   In *Tricon Roofing*, Tricon attempted to recover from Gabor's Fast Check for nine checks that Quintillo Alonzo cashed that were not authorized by Tricon.   The Eighth District determined that, although Section 1303.47(B) allows an employer to recover from a bank in some instances, Gabor was entitled to summary judgment because Tricon failed to present evidence that Gabor did not exercise ordinary care. *Tricon Roofing*, 2003-Ohio-3027, at ¶ 20, 23.   In his complaint, Mr. Miller alleges that U.S. Bank allowed Ms. Bennett to wrongfully deposit and withdraw money from her imposter account, "which is not consistent with reasonable commercial banking practices."   We, therefore, conclude that his reliance on *Tricon Roofing* is appropriate, recognizing that that case was disposed on summary judgment while this case is only at the pleading stage.

{¶10} Upon review of Revised Code Section 1303.47(B), including the official comments to Section 3-405 of the Uniform Commercial Code, we conclude that Section

1303.47(B) imposes a duty on banks to exercise ordinary care regarding fraudulently-endorsed financial instruments. Viewing the allegations Mr. Miller made in his complaint in a light most favorable to him, he has sufficiently alleged that U.S. Bank breached its duty to him under Section 1303.47(B). His assignment of error is sustained.

III.

{¶11} The trial court incorrectly granted U.S. Bank's motion to dismiss as to Mr. Miller's claim under Section 1303.47(B). The judgment of the Lorain County Court of Common Pleas is reversed, and this matter is remanded for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
WHITMORE, J.
CONCUR.

APPEARANCES:

MICHAEL J. DUFF, Attorney at Law, for Appellant.

SEAMUS J. MCMAHON, Attorney at Law, for Appellee.