[Cite as *Ada Exempted Village School Dist. Bd. of Edn. v. Ada Wind, L.L.C.*, 2020-Ohio-4017.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

ADA EXEMPTED VILLAGE SCHOOL
DISTRICT BOARD OF EDUCATION,

      PLAINTIFF-APPELLANT,                CASE NO.  6-19-13

      v.

ADA WIND, LLC, ET AL.,                O P I N I O N

      DEFENDANTS-APPELLEES.

Appeal from Hardin County Common Pleas Court
Trial Court No. 20181144CVH

Judgment Reversed and Cause Remanded

Date of Decision:   August 10, 2020

APPEARANCES:

    *Christian M. Williams* **for Appellant**

    *Gregory P. Amend* **for Appellees**

Case No. 6-19-13

**SHAW, P.J.**

{¶1} Plaintiff-appellant, Ada Exempted Village School District Board of Education (the "Board"), appeals the October 18, 2019 judgment of the Hardin County Court of Common Pleas granting the motion to dismiss its complaint filed by defendants-appellees, Ada Wind, LLC ("Ada Wind") and NexGen Energy Partners, LLC ("NexGen"). On appeal, the Board argues that the trial court erred in determining that the contractual limitations period had expired prior to the Board filing its complaint.

*Relevant Facts*

{¶2} On June 24, 2009, the Board and Ada Wind entered into a contract known as the Renewable Energy Service Agreement ("RESA") for the installation of a wind turbine generator on the Board's property.[1] In exchange for allowing Ada Wind to install the wind turbine on the Board's property, the Board purchased the energy produced by the turbine at a locked-in predictable rate.

{¶3} In January of 2010, the wind turbine was installed and the Board began purchasing the energy that the turbine produced as provided for by the RESA.

{¶4} On June 23, 2016, a lightning strike caused substantial damage to the wind turbine, rendering it inoperable. The parties agreed that the lightning strike

---

[1] The record indicates that NexGen initially negotiated the installation arrangement with the Board and suggests that Ada Wind, a limited liability company, was created for the purpose of being the contract "Provider" under the RESA.

-2-

constituted a "Force Majeure" under the RESA. Thereafter, the Board notified Ada Wind of the damage and requested the turbine be repaired.

{¶5} On June 26, 2017, after no repair to the turbine had been made the Board through counsel notified Ada Wind of its intent to terminate the agreement pursuant to sections 9.2.2 and 12.3 of the RESA. These provisions of the RESA allow for the Board to give a 30-day notice of termination of the agreement if a Force Majeure has occurred preventing Ada Wind from producing energy for twelve consecutive months and releases both parties from further liability under the RESA. The Board further demanded that Ada Wind remove the turbine from its property pursuant to section 9.4 of the RESA. Thereafter, Ada Wind and NexGen entered on the property and removed parts from the turbine for another customer, but did not remove the turbine.

{¶6} On April 11, 2018, counsel for the Board sent a letter notifying Ada Wind that the Board intended to file a cause of action against Ada Wind and/or NexGen. The Board expressed its willingness to resolve the matter pursuant to section 19.7 of the RESA, under which the parties agreed to arbitrate their disputes, or in the alternative, section 19.7 permitted the parties to file a lawsuit to resolve any dispute covered by the RESA, but only after the parties engaged in meditation as a condition precedent. The Board requested a response from Ada Wind's counsel.

{¶7} On May 10, 2018, counsel for Ada Wind responded, indicating that Ada Wind was willing to mediate the matter and inquiring whether the Board had suggestions as to who would be the mediator and a location for the mediation.

{¶8} On June 7, 2018, counsel for Ada Wind contacted the Board's counsel to follow up on the previous correspondence.

{¶9} On July 25, 2018, counsel for the Board responded by suggesting the use of a specific mediator, one that NexGen had used in a similar dispute with another school board, and requesting that Ada Wind provide possible dates, times, and locations for the mediation. Two days later, on July 27, 2018, counsel for Ada Wind indicated that he would speak to his client and get back to the Board.

{¶10} On August 28, 2018, counsel for the Board contacted Ada Wind's counsel inquiring of the status of the mediation planning.

{¶11} On September 10, 2018, counsel for Ada Wind informed the Board's counsel that Ada Wind was no longer willing to participate in mediation because it had no liability under the contract.

*Procedural History*

{¶12} On December 3, 2018, the Board filed a complaint against Ada Wind and NexGen for a declaratory judgment and breach of contact.[2] Specifically, the Board alleged that under the RESA Ada Wind and NexGen were required to remove

---

[2] The complaint was later amended to include NexGen as an additional defendant in the lawsuit.

the turbine from the Board's property at Ada Wind's and/or NexGen's expense. The Board requested specific performance and/or compensatory damages arising from Ada Wind's and NexGen's refusal to remove the turbine,[3] as well as an award of reasonable costs and attorney fees related to bringing the lawsuit.

{¶13} Ada Wind and NexGen subsequently filed a motion to dismiss the complaint pursuant to Civ.R. 12(B)(6). Specifically, Ada Wind and NexGen claimed that the Board's complaint failed to state a claim upon which relief could be granted because a one-year contractual limitations period for filing a lawsuit had expired prior to the Board filing its complaint. Ada Wind and NexGen further argued that, even assuming the Board's case was not time barred, the express terms of the RESA, which relate to the parties' rights and obligations following a Force Majeure event, released them from liability.

{¶14} The Board filed a response arguing that it initiated the mediation process prior to the one-year contractual limitations period, therefore, the claims asserted in its complaint against Ada Wind and NexGen were not time-barred. The Board also argued that the dispute resolution procedure under the RESA was ambiguous and asserted that Ada Wind and NexGen acted in bad faith when they initially agreed to mediate, but then refused.

---

[3] The record indicates that the estimated cost to the Board for removal of the turbine would be $150,000.

{¶15} The trial court conducted a hearing on Ada Wind's and NexGen's motion to dismiss the complaint. At the hearing, the parties appeared to agree that the one-year contractual limitations period set forth in the RESA began to run on or about July 26, 2017, after the 30-day notice period had expired for the Board's declaration of its intent to terminate the RESA. Accordingly, the contractual limitations period was set to expire on July 26, 2018. The parties disputed whether their communications during April through July 2018 attempting to arrange a mediation were sufficient to constitute an "action" under the RESA.

{¶16} On October 18, 2019, the trial court issued a judgment entry granting Ada Wind's and NexGen's motion to dismiss on the basis that the one-year contractual limitations period had expired prior to the Board filing its complaint initiating this lawsuit.

{¶17} It is from this judgment that the Board now appeals asserting the following assignment of errors.

**ASSIGNMENT OF ERROR NO. 1**

**THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT ADA EXEMPTED VILLAGE SCHOOL DISTRICT BOARD OF EDUCATION BY GRANTING DEFENDANTS-APPELLEES' ADA WIND, LLC, AND NEXGEN ENERGY PARTNERS, LLC, MOTION TO DISMISS, AS THE PARTIES TIMELY INITIATED AND COMPLIED WITH THE AGREEMENT'S MANDATORY MEDIATION PROCESS WITHIN THE CONTRACTUAL LIMITATION OF ACTIONS PERIOD.**

**ASSIGNMENT OF ERROR NO. 2**

**THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT ADA EXEMPTED VILLAGE SCHOOL DISTRICT BOARD OF EDUCATION BY GRANTING DEFENDANTS-APPELLEES' ADA WIND, LLC, AND NEXGEN ENERGY PARTNERS, LLC, MOTION TO DISMISS IN DEROGATION OF OHIO'S PUBLIC POLICY FAVORING MEDIATION.**

**ASSIGNMENT OF ERROR NO. 3**

**THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT ADA EXEMPTED VILLAGE SCHOOL DISTRICT BOARD OF EDUCATION BY GRANTING DEFENDANTS-APPELLEES' ADA WIND, LLC, AND NEXGEN ENERGY PARTNERS, LLC, MOTION TO DISMISS DESPITE APPELLEES' BAD FAITH REFUSAL TO ADHERE TO THE PARTIES' AGREEMENT.**

*First Assignment of Error*

{¶18} In its first assignment of error, the Board argues that the trial court erred in granting Ada Wind's and NexGen's motion to dismiss the complaint pursuant to Civ.R. 12(B)(6). Specifically, the Board asserts that the trial court erred when it determined that the one-year contractual limitations period for filing a lawsuit had expired prior to the Board filing its complaint because under the express terms of the contract, the parties were required to "submit the dispute to mediation" prior to the filing of a lawsuit, and the Board had attempted to initiate mediation with Ada Wind and NexGen prior to the expiration of the limitations period. Alternatively, the Board argues that the parties' agreement to initiate mediation

Case No. 6-19-13

tolled the running of the contractual limitations period and, therefore, Ada Wind and NexGen were equitably estopped from asserting the contractual limitations period as a defense.

*Standard of Review*

{¶19} A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992). For a court to dismiss on this basis, "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus. In ruling on a Civ.R. 12(B)(6) motion, the court must accept the factual allegations contained in the complaint as true and draw all reasonable inferences from these facts in favor of the plaintiff. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). If there is a set of facts consistent with the complaint that would allow for recovery, the court must not grant the motion to dismiss. *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991). When reviewing a judgment rendered on a Civ.R. 12(B)(6) motion to dismiss, our standard of review is ordinarily *de novo*. *Foreman v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 14AP-15, 2014-Ohio-2793, ¶ 9, citing *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5.

*Relevant Contractual Provisions in the RESA*

{¶20} By way of providing some background, the dispute between the parties stems from the parties' rights and obligations arising from the termination of the RESA upon the occurrence of a Force Majeure event.  Section 12.3 of the RESA, "Termination for Force Majeure Event," states in relevant part:

> **If a Force Majeure event affects Provider's performance of its obligations hereunder for a continuous period of twelve consecutive months, then Customer may terminate this RESA upon thirty (30) days' written notice to Provider.  If at the end of such thirty (30) day period such Force Majeure event continues, this RESA shall automatically terminate. Upon such termination for a Force Majeure event, neither party shall have any liability to the other, subject to Section 17.4 (Survival).**

{¶21} In addition, Section 9.2.2 of the RESA states that:

> **\* \* \* Customer may terminate this RESA without further liability, upon thirty (30) days written notice to Provider, if \* \* \* (ii) a Force Majeure Event has occurred that has prevented Provider from producing Electricity for a period of at least twelve consecutive months, subject to Section 12 (Force Majeure).**

{¶22} Under the RESA, Section 19.1 defines a "Force Majeure" as "acts of God, including but not limited to \* \* \* lightning \* \* \*."

{¶23} Regarding the removal of the turbine after the Board's termination, Section 9.4 under the RESA states that:

> **At the end of the Term, or upon any termination as set forth herein, Provider shall remove the System(s) at its sole cost and expense, except upon an Event of Default by Customer, in which case Customer shall pay all costs of decommissioning, removal mobilization and storage as set forth in Section 13 (Default and**

**Remedies). The Foundation shall remain intact on the Premises for either redeployment of another System by the Provider or any other desired use by Customer.**

{¶24} Accordingly, the Board contends that after it terminated the RESA on July 26, 2017, Ada Wind and NexGen were obligated to remove the inoperable turbine at their sole expense. When Ada Wind and NexGen failed to do so by April of 2018, the Board sought to enforce its rights under the RESA.

{¶25} Section 19.7 of the RESA states that:

**The Parties will use their best efforts to resolve any disputes in an amicable manner. In the event that disputes arise between the Parties that cannot be resolved through conference and negotiation, any unresolved controversy or claim arising from or relating to this RESA or breach thereof shall be settled by arbitration in Hardin County, Ohio administered by the AAA in accordance with its Commercial Arbitration Rules and Procedures, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Both Parties shall have the right to have the dispute adjudicated by the Ohio State courts, provided, however, that it shall be a condition precedent to the filing of any lawsuit that the parties shall first submit the dispute to mediation with a qualified mediator mutually agreed to by the parties.**

{¶26} Section 19.4 further specifies that:

**\* \* \* Any action against Provider must be brought within one (1) year after the cause of action accrues.**

*Discussion*

{¶27} As previously noted, the parties appear to agree that the one-year contractual limitations period set forth in 19.4 began to run upon the Board's

termination of the RESA on July 26, 2017. The crux of the parties' dispute is what effect the agreement between counsel for the Board and Ada Wind to pursue mediation in May of 2018 had on the running of the contractual limitations period for filing a lawsuit.

{¶28} Initially, we emphasize that under the RESA the parties specifically agreed to a one-year period of limitations, rather than relying upon the statute of limitations set forth in R.C. 2305.06.[4] Therefore, in order to solve this matter we must look exclusively to the provisions of the RESA.

{¶29} "Contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Nationwide Mut. Fire Ins. Co. v. Pusser*, --- Ohio St.3d ---, 2020-Ohio-2778, ¶ 8, citing *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of the syllabus. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Hopkins v. Car Go Self Storage*, 10th Dist. Franklin No. 18AP-715, 2019-Ohio-1793, ¶ 14. In determining the intent of the parties, the court must read the contract as a whole and give effect to every part of the contract, if possible. *Marusa v. Erie Ins. Co*, 136 Ohio St.3d 118, 2013-Ohio-1957, ¶ 8. Common words will be given their ordinary meaning unless the entirety of the

---

[4] Revised Code 2305.06 governs a "contract in writing" and states that "an action upon a specialty or an agreement, contract, or promise in writing shall be brought within eight years after the cause of action accrued."

contract reveals a contrary intent. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361 (1997).

{¶30} On appeal, the Board argues that the parties' agreement to mediate on May 10, 2018, satisfied the condition precedent to filing this lawsuit set forth in section 19.7 of the RESA, and constituted the initiation of an "action" under section 19.4 of the RESA. Thus, the Board contends that the trial court erred when it found that the contractual limitations period had barred the filing of its complaint on December 3, 2018. We agree.

{¶31} In examining the RESA, it is apparent that section 19.4 setting forth the limitations period by stating that "[a]*ny action* against Provider must be brought within one (1) year after the cause of action accrues" must be read in conjunction with section 19.7, the provision establishing the procedures for handling the parties' disputes under the RESA. (Doc. No. 1, Ex. 1)(emphasis added). At the outset, section 19.7 obligates the parties to "use their best efforts to resolve any disputes in an amicable manner." (Id.). In the event that the parties cannot resolve their dispute pertaining to the RESA "through conference and negotiation," section 19.7 authorizes the parties to settle their dispute through arbitration as prescribed by the RESA. (Id.). In the alternative, section 19.7 also states that:

> **Both Parties shall have the right to have the dispute adjudicated by the Ohio State courts, provided, however, that it shall be a condition precedent to the filing of any lawsuit that the parties**

> **shall first submit the dispute to mediation with a qualified mediator mutually agreed to by the parties.**

(Doc. No. 1, Ex. 1).

{¶32} Therefore under the plain language of section 19.7, the parties are specifically granted the *right* to have a dispute pertaining to the RESA adjudicated by an Ohio State court so long as the parties first submit the dispute to mediation with a qualified and mutually agreed upon mediator.

{¶33} Thus, section 19.7 establishes multiple methods by which the parties are authorized under the RESA to resolve their disputes arising from the contract. This notwithstanding, section 19.4 setting forth the contractual period of limitation uses the singular, undefined term "action" to limit when the parties can exercise these dispute resolution options outlined in section 19.7.

{¶34} Ada Wind and NexGen argue, and the trial court agreed, that the term "action" as used in section 19.4 must be construed to have the same meaning as "action" under R.C. 2305.06, which specifies the statute of limitations period for initiating a lawsuit for a claim based upon a written contract. Thus, Ada Wind and NexGen contend that "action" under section 19.4 is necessarily equated to a lawsuit. However, given the fact that the parties specifically chose to draft their own contractual limitations period without relying upon the statute, we do not find this argument persuasive. Specifically, the parties could have simply used the term "lawsuit" as they did in section 19.7 of the RESA if that is what they had intended

for section 19.4 of the RESA. Moreover, to interpret the term "action" under section 19.4 to only mean a lawsuit effectively puts no time limitation on a party bringing an arbitration proceeding, and further negates the use of the word "any" which immediately precedes the word "action," all of which clearly refers to more than one acceptable method of dispute resolution under the RESA.

{¶35} This notwithstanding, section 19.7 clearly grants the parties the *right* to have the dispute adjudicated by an Ohio State court. However, before that right can be exercised section 19.7 requires the parties not only to *submit* the dispute to mediation, but the dispute must also be presided over by a *mediator mutually agreed to by the parties*. Thus, the right of the parties to file a lawsuit is inextricably tied to engaging in mediation under section 19.7. Under the interpretation of "action" advocated for by Ada Wind and NexGen, if the parties cannot agree upon a mediator, or if one party is not diligent in its efforts to agree to a meditator and effectively stalls the process until the expiration of the one-year contractual limitations period, the party seeking to enforce its right to have the dispute adjudicated by an Ohio State court is left with no recourse and is effectively deprived of that contractual right.

{¶36} In other words, this narrow construction under section 19.4 equating an "action" to a lawsuit renders meaningless the provision granting a party the right to have the dispute adjudicated by an Ohio State court. Such a construction runs

afoul of the fundamental principle of contract interpretation that in determining the parties' intent, a court must read the contract as a whole and give effect, if possible, to every part of the contract. *State ex rel. Yost v. Summer Rays, Inc.*, 10th Dist. Franklin Nos. 18AP-929 and 19AP-133, 2019-Ohio-3907, ¶ 15, citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361-62 (1997).

{¶37} Notably, the interpretation advocated for by Ada Wind and NexGen is premised on mediation being an entirely separate option of dispute resolution from filing a lawsuit under the RESA. However, as previously discussed, the plain language of section 19.7 makes these methods of dispute resolution inseparable. In this respect, we find the case authority relied upon by Ada Wind and NexGen in their brief to be distinguishable. Therefore, in reading sections 19.4 and 19.7 together, we conclude that "any action" as used in section 19.4 must be broadly construed to encompass all the options of dispute resolution specified in section 19.7, including the plain language of that section that grants the parties the right to have the dispute adjudicated by an Ohio State court contingent upon the parties engaging in mediation.

{¶38} Accordingly, in drawing all reasonable inferences from the facts in favor of the plaintiff, as we are required to do, we conclude that the Board brought an "action" under the RESA within the one-year contractual period of limitation

under section 19.4 when it initiated the process of mediation with Ada Wind, which it was required to do as a condition precedent to filing a lawsuit under the section 19.7. Therefore, we conclude that there is a set of facts consistent with the allegations of the complaint and provisions of the RESA that could allow for recovery. Accordingly, we conclude the trial court erred when it granted Ada Wind's and NexGen's motion to dismiss pursuant to Civ.R.12(B)(6). The Board's first assignment of error is sustained.

*Second and Third Assignments of Error*

{¶39} Due to our resolution of the first assignment of error, the Board's second and third assignments of error are rendered moot. Therefore, this Court declines to address these assignments of error. App.R. 12(A)(1)(c).

{¶40} For all these reasons, the first assignment of error is sustained and the judgment of the trial court is reversed and the cause is remanded for proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**