NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0512n.06

Case No. 09-6011

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jul 22, 2011*

LEONARD GREEN, Clerk

THELMA GREATHOUSE, on behalf of the )
Estate of Angela Greathouse King and as )
guardian and next friend of Dennis Cameron )
King, a minor, )
   )   ON APPEAL FROM THE
   )   UNITED STATES DISTRICT
   Plaintiff-Appellant, )   COURT FOR THE EASTERN
   )   DISTRICT OF KENTUCKY
   v. )
   )
JOHN COUCH, )
   )
   Defendant-Appellee.

_____

BEFORE: BATCHELDER, Chief Judge; KEITH and ROGERS, Circuit Judges.

ALICE M. BATCHELDER, Chief Judge. Thelma Greathouse appeals the district court's

order granting summary judgment to defendant John Couch on the basis of qualified immunity on

Greathouse's Fourth Amendment claim for excessive force. Because Couch did not violate any

clearly established constitutional right, we AFFIRM.

I.

This case arises from the execution of a search warrant at the home of Angela and Dennis

King on the night of May 17, 2004. Five officers were present to execute the search warrant,

including Perry County Deputy Sheriff John Couch. The Kings and their teenage son were at home

when the officers arrived. The parties dispute the details of what happened in the home, but they

agree that both Couch and Mrs. King fired shots, and that one shot hit Mrs. King in the head. She died in December 2005 as a result of her injuries.

Greathouse's account of what happened in the Kings' home is furnished largely by Dennis King. Mr. King heard a "loud thump" on his door, and his wife ran into the bedroom. Couch then entered the home with a gun, and ordered Mr. King to get on the floor. Couch was wearing jeans and a white t-shirt, and he did not identify himself as a police officer. While this was happening, Mrs. King returned from the bedroom carrying a gun, and she fired two "warning shots" into the ceiling. Couch then shot Mrs. King twice, hitting her once in the head.

Couch's version of the facts is quite different. According to Couch, the officers announced, "state police — search warrant," when they arrived at the home. After entering the home, the officers were getting Mr. King down on the floor when Mrs. King emerged from the bedroom and fired two shots, "barely missing" Couch's head. Couch returned fire, striking Mrs. King in the head with one bullet.

Greathouse filed this lawsuit on behalf of Mrs. King, alleging violations of the knock-and-announce rule and the Fourth Amendment's prohibition on excessive force. Couch filed a motion for summary judgment on both claims. The district court denied his motion with respect to the first claim and granted it with respect to the second. The parties have since reached a settlement regarding the knock-and-announce violation, and the district court entered an order declaring that its earlier grant of qualified immunity on the excessive-force claim was final and appealable. Greathouse filed this appeal, in which the only issue is qualified immunity for the excessive-force claim.

**II.**

We review de novo a district court's order granting summary judgment based on qualified immunity. *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the record "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[1] We must review the facts and evidence in the light most favorable to the nonmoving party. *Warf v. Bd. of Elections*, 619 F.3d 553, 558 (6th Cir. 2010).

A police officer is entitled to qualified immunity unless the plaintiff demonstrates that the officer violated a constitutional right and that the right was clearly established at the time of the violation. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

**A.**

As a threshold matter, we must establish the relevant time frame for evaluating an excessive-force claim. Greathouse urges us to analyze the reasonableness of Couch's conduct within a time frame broader than that used by the district court. The district court looked only at the moments immediately preceding Couch's shots, but Greathouse contends that we must view Couch's gunfire in light of the entire sequence of events, including his alleged knock-and-announce violation, in

---

[1] A revised version of Federal Rule of Civil Procedure 56 became effective on December 1, 2010. The motion for summary judgment in this case was filed prior to December 1, 2010, and is governed by the version of Rule 56 that was in effect at the time the motion was filed.

order to evaluate the reasonableness of his actions. She contends that Couch created the tense situation that provoked Mrs. King to fire her "warning shots," and that "[Couch] should not be able to legally benefit from his wrongful actions in entering a residence without knocking and announcing." Appellant's Br. at 12.

Our precedent does not support Greathouse's position, and, indeed, we have rejected the same argument in similar cases. We apply a "segmented approach" to excessive-force claims, in which we "carve up" the events surrounding the challenged police action and evaluate the reasonableness of the force by looking only at the moments immediately preceding the officer's use of force. *See Claybrook v. Birchwell*, 274 F.3d 1098, 1103-04 (6th Cir. 2001); *Dickerson*, 101 F.3d at 1160-62. Our segmented approach applies even to encounters lasting very short periods of time. *See Claybrook*, 274 F.3d at 1102, 1105 (segmenting a 1-2 minute encounter in order to analyze an excessive force claim). Part of the rationale behind this approach is that,

> Other than random attacks, all [excessive force] cases begin with the decision of a police officer to do something, to help, to arrest, to inquire. If the officer had decided to do nothing, then no force would have been used. In this sense, the police officer always causes the trouble. But it is trouble which the police officer is sworn to cause, which society pays him to cause, and which, if kept within constitutional limits, society praises the officer for causing.

*Dickerson*, 101 F.3d at 1161 (quoting *Plakas v. Drinski*, 19 F.3d 1143, 1150 (7th Cir. 1994)).

In applying the segmented approach, we have held that knock-and-announce rule violations are "conceptually distinct" from excessive-force claims and are, accordingly, analyzed separately. *Id.* at 1162. In *Dickerson*, we considered and rejected an argument almost identical to Greathouse's, that "officers should be held accountable for creating the need to use excessive force by their

4

unreasonable unannounced entry." *Id.* at 1160. In subsequent cases, we have continued to apply the segmented approach to excessive-force claims, without regard to earlier violations committed by police officers. *See, e.g.*, *Chappell v. City of Cleveland*, 585 F.3d 901, 915-16 (6th Cir. 2009); *Claybrook*, 274 F.3d at 1105.

Despite Greathouse's arguments to the contrary, the knock-and-announce rule violation is irrelevant to her excessive-force claim. The district court correctly segmented the events and evaluated the reasonableness of Couch's gunfire by looking only at the moments immediately preceding his use of force.

**B.**

We turn now to the question of whether Couch is entitled to qualified immunity on this excessive-force claim. In this analysis, "the sole question . . . is whether the force used violated a clearly established Fourth Amendment protection." *Saucier v. Katz*, 533 U.S. 194, 207 (2001). The Supreme Court has held that this inquiry consists of two elements: 1) whether the facts alleged make out the violation of a constitutional right; and 2) whether the right was clearly established at the time of the alleged violation. *Id.* at 200. We are free to approach these questions in any order, *Pearson v. Callahan*, 129 S. Ct. 808, 821 (2009), and a defendant is entitled to qualified immunity if the plaintiff fails on either prong, *Chappell*, 585 F.3d at 907.

We may dispose of this case by reference to *Saucier*'s second prong because, on these facts, even if there was a constitutional violation, it did not contravene clearly established law. Under this approach, we ask "whether [the] general prohibition against excessive force was the source for clearly established law that was contravened in the circumstances this officer faced." *Saucier*, 533

U.S. at 207-08. In other words, "[t]he question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." *Id.* at 208.

When a person aims a weapon in a police officer's direction, that officer has an objectively reasonable basis for believing that the person poses a significant risk of serious injury or death. *Estate of Sowards v. City of Trenton*, 125 F. App'x 31, 38 (6th Cir. 2005); *see also Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 487 (6th Cir. 2007) ("Prior panels of this court have held that an officer may use deadly force whenever he or she, in the face of a rapidly unfolding situation, has probable cause to believe that a suspect poses a serious physical threat either to the police or members of the public."). A police officer need not wait for a suspect to open fire on him, much less wait for the suspect to actually hit him, before the officer may fire back. *See, e.g.*, *Sowards*, 125 F. App'x at 38-39 (use of deadly force permissible where victim pointed a gun through doorway of apartment); *Boyd v. Baeppler*, 215 F.3d 594, 599-600 (6th Cir. 2000) (holding that whether a victim actually fired at officers was "wholly immaterial," and the only question was whether he threatened to do so).

The circumstances in this case provide substantial grounds for Couch to have concluded that he had "legitimate justification under the law" for firing at Mrs. King, and that he would contravene no clearly established law by doing so. *See Saucier*, 533 U.S. at 208-09. Couch is therefore entitled to qualified immunity for his actions. *See Pearson*, 129 S. Ct. at 823.

**III.**

We **AFFIRM** the judgment of the district court.