[Cite as *Jordan v. Howard*, 2021-Ohio-4025.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| SABRINA JORDAN, EXECUTRIX | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 29190 |
| | : | |
| v. | : | Trial Court Case No. 2021-CV-927 |
| | : | |
| JOHN HOWARD, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of November, 2021.

. . . . . . . . . . .

JACQUELINE GREEN, Atty. Reg. No. 0092733, M. CAROLINE HYATT, Atty. Reg. No. 0093323, 441 Vine Street, Suite 3400, Cincinnati, Ohio 45202
and
SARAH GELSOMINO, Atty. Reg. No. 0084340, 50 Public Square, Suite 1900, Cleveland, Ohio 44113
 Attorneys for Plaintiff-Appellant

KELLY M. SCHROEDER, Atty. Reg. No. 0080637, 1 South Main Street, Suite 1800, Dayton, Ohio 45402
 Attorney for Defendants-Appellees

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Plaintiff-Appellant, Sabrina Jordan, Administrator of the Estate of Jamarco McShann ("Jordan") appeals from the dismissal of her case against Defendants-Appellees, John Howard and Jerry Knight (collectively, "Defendants"). Jordan had sued Howard and Knight, two City of Moraine Police officers, based on their involvement in the shooting death of McShann. Previously, Jordan had sued these officers, and others, in federal district court.

{¶ 2} According to Jordan, the trial court erred in dismissing her claims under Civ.R. 12(B)(6), based on collateral estoppel and because they were time-barred. After considering the issues, we find no error on the trial court's part. Jordan's claims for negligence/recklessness, assault and battery, civil conspiracy, and survivorship were barred because Jordan failed to refile those claims in state court within the time prescribed by 28 U.S.C. 1367(d) or by R.C. 2305.19(A), after they were dismissed by the federal district court.

{¶ 3} Furthermore, the trial court correctly found that Jordan's remaining claim for wrongful death was barred by issue preclusion, i.e., by the collateral estoppel effect of the federal court action. Specifically, the federal district and appellate courts found that the police officers acted reasonably to stop a serious threat of deadly force and did not violate clearly established law. The state court claim for wrongful death involved the same parties, and the same evidence would sustain the issues involved in both proceedings. As a result, collateral estoppel applied and prevented Jordan from relitigating her claim in state court. Accordingly, the trial court's judgment will be affirmed.

## I. Facts and Course of Proceedings

{¶ 4} Because this matter was dismissed under Civ.R. 12(B)(6), we will assume that the allegations in the complaint are true. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988).

{¶ 5} According to the complaint, "[o]n October 20, 2017, at approximately 5:15 a.m., Jamarco McShann was sleeping in a lawfully parked car located at the Valleyview Apartments in Moraine, Ohio. Defendant Jerry Knight arrived at the Valleyview Apartments in response to a complaint regarding a vehicle with loud noise in the parking lot. Defendant Officer John Howard also responded to Valleyview Apartments. Although Officer Michael Cornely knew two Moraine Police officers already responded, he too went to the Valleyview Apartments in response to the loud music call. Once the three officers were on the scene, they approached Jamarco's vehicle. Inside, the officers saw Jamarco asleep in the drivers' seat. They did not know who he was. They also claimed that they saw a gun in the car." Complaint (March 9, 2021), ¶ 6-11.

{¶ 6} "Ohio is an open-carry state. Ohio law permits carrying weapons and does not per se prohibit extended capacity magazines. Ohio concealed handgun licenses allow loaded handguns inside vehicles and permit drivers to transport or have a loaded handgun on or about their person. * * * Jamarco remained asleep in the car. He did not pose any threat of death or serious physical harm to the Defendant Officers or to any other person. Defendants decided they would attempt to wake Jamarco." *Id*. at ¶ 12-14.

{¶ 7} "The officers decided to run the plates on the car, which came back registered to a woman in the apartment complex. They decided to try to find her because

it would have been helpful and less startling for a familiar person to wake Jamarco. They sent Cornely to knock on her door. While they waited for Cornely to return, Knight and Howard milled around a tree. No one answered the door, and Cornely returned alone. Howard decided to place stop sticks around the vehicle to prevent it from moving, and Knight moved his cruiser to shine his spotlight onto Jamarco's car." *Id.* at ¶ 15-17.

{¶ 8} "Even though they were addressing a minor complaint for noise, though gun possession is legal in Ohio, and though Jamarco had engaged in no conduct that suggested he presented a threat of any kind, Defendant Officer Howard asked the Moraine Police dispatcher to contact officers at the Moraine Police station for additional help. Jamarco remained asleep in the car. Howard, Knight, and Cornely continued to mill about on the apartment grounds, without bothering to watch Jamarco or his car, as they waited." *Id.* at ¶ 18-19.

{¶ 9} "Moraine officers O'Neal and Eller arrived next. Up to this point in time, Defendants and their fellow officers did not attempt to provide any medical aide [sic] to Jamarco, did not check for breathing, and did not attempt to wake him. Eller stayed on the apartment grounds, while Defendant Howard ordered the other officers to take designated places surrounding the car, where Jamarco slept. Nearly thirty minutes after arriving on scene, without any legitimate reason to rush or engage in aggressive policing, Defendant Howard ordered his fellow officers to take tactical positions with their weapons drawn." Complaint at ¶ 20-23.

{¶ 10} "Defendant Howard positioned himself on the curb at the rear windshield of the car. Officer Cornely was positioned near the front passenger's window. O'Neal stood by the driver's window holding a ballistic shield, and Defendant Knight stood behind

O'Neal. All the officers pointed their guns at Jamarco, who had not moved and was still asleep. As the officers took positions around the car, DaShelle Sparks, Jamarco's fiancée, approached. She had been at her cousin's apartment nearby when Cornely knocked on her door, and when a neighbor told her about the situation outside, * * * she headed to the area with her cousin. She saw police around her car. DaShelle told police that she owned the car and her son's father was inside." *Id.* at ¶ 24-26.

{¶ 11} "Eller approached DaShelle, pointed his gun in her face, and ordered her to put up her hands or he would shoot. DaShelle complied and took a couple steps back. None of the officers – including Howard, who had taken charge of the scene, and Knight, who became the person to initiate contact with McShann – stopped the process of surrounding the car to allow DaShelle to approach. None of the officers even attempted to call off the approach in order to have DaShelle approach Jamarco to wake him. With nothing but a noise complaint, a sleeping man, and the alleged gun in the car to justify their conduct, Defendants and their fellow officers took action. Defendant Knight knocked at the rear driver's side window behind Jamarco's head, and at the same time, all the officers started screaming in a cacophony of competing commands." *Id.* at ¶ 27-29.

{¶ 12} "Jamarco sat up, startled, and put his hands in the air. He did not present a threat of any kind. Seconds later, Defendant Knight fired his pistol and then Defendant Howard pulled the trigger on his shotgun. Knight fired seven times and Howard fired twice. Their bullets pierced Jamarco's body all over, killing him. Jamarco McShann did not pose a threat of death or serious physical harm at the time Defendants Howard and Knight killed him. * * * Though Detective Eller requested medics as soon as shots were

fired, miscommunication between Eller, Defendant Officers, the dispatch officer, and the Moraine Fire Department EMS caused the delay of life-saving measures by EMTs who were moments away, awaiting authorization to enter the scene. * * * When EMTs finally arrived to treat Jamarco, he was pronounced dead on the scene." *Id.* at ¶ 30-35.

{¶ 13} The complaint further alleged that "[t]he Defendant Officers jointly agreed and/or conspired with one another to prepare false, misleading, and incomplete official reports and to give false, incomplete, and misleading versions to their supervisors and to the public. In order to cover up their misconduct, they falsely claimed that Jamarco McShann placed them in imminent fear of bodily harm." *Id.* at ¶ 37.

{¶ 14} Based on these allegations, Jordan asserted state claims for "negligence – reckless conduct," assault and battery, civil conspiracy, survivorship, and wrongful death. *Id.* at p. 8-10. The complaint also noted that Jordan had previously filed suit against Defendants and other officers in the United States District Court on March 20, 2018, and had asserted federal civil rights claims and state claims. *Id.* at ¶ 46. In addition, the complaint stated that after Jordan had dismissed all claims against Eller, the remaining defendants (Howard, Knight, Cornelly, and O'Neal), had filed summary judgment motions. *Id.*

{¶ 15} On February 18, 2020, the federal district court granted summary judgment to the remaining defendants other than O'Neal, to whom Jordan had given a notice of dismissal. *Id.*; *Jordan v. Howard*, 440 F.Supp.3d 843, 857 (S.D.Ohio 2020) (*Jordan I*). The court also declined to exercise supplemental jurisdiction over the state law claims and dismissed them without prejudice. At that point, Jordan appealed to the Sixth Circuit Court of Appeals, which affirmed the district court's judgment on February 3, 2021.

*Jordan v. Howard*, 987 F.3d 537 (6th Cir.2021) (*Jordan II*). The Sixth Circuit Court of Appeals also denied Jordan's petition for rehearing en banc on March 8, 2021. Jordan then filed the current state court action against only Howard and Knight on March 9, 2021.

{¶ 16} On April 9, 2021, Defendants filed a motion to dismiss the complaint and attached copies of the federal court decisions to the motion. The motion was based on the fact that the statute of limitations had expired and that the claims were also barred by collateral estoppel due to the federal court decisions. After Jordan filed a response, Defendants filed a reply. Jordan then filed a surreply.

{¶ 17} On June 15, 2021, the trial court granted the motion to dismiss, finding that the survivorship claims, including civil conspiracy and negligent-reckless conduct sounded in assault and battery, and were barred under the one-year statute of limitations for that tort. Decision, Order, and Entry Sustaining Defendants' Motion to Dismiss; Entry of Dismissal ("Decision") (June 15, 2021), p. 4-5. The court further found that all the state claims, including wrongful death, were barred by collateral estoppel. *Id.* at p. 10-21. Jordan timely appealed from the trial court's dismissal of her action.

## II. Statute of Limitations

{¶ 18} For purposes of convenience, we will address the assignments of error out of order. Jordan's second assignment of error states that:

> The Trial Court Erred as a Matter of Law in Dismissing Plaintiff's Claims as Time-Barred.

{¶ 19} Under this assignment of error, Jordan concedes that a one-year statute of limitations applies to bodily injuries arising from assault or battery. However, she

contends that her remaining claims based on negligence/recklessness are subject to the longer two-year statute of limitations for bodily injury resulting from negligence, and that a two-year statute of limitations also applies to the civil conspiracy, wrongful death, and survivorship claims. In addition, Jordan argues that even if a one-year statute applies, she was entitled to calculate the date for refiling her state-law claims from the time the Sixth Circuit Court of Appeals affirmed the district court's decision, which would make the claims timely.

{¶ 20} Before addressing these points, we will outline the applicable standards of review.

## A. Standards of Review

{¶ 21} "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992). As noted, when such motions are considered, a trial court "must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell*, 40 Ohio St.3d at 192, 532 N.E.2d 753. Then, before the complaint may be dismissed, "it must appear beyond doubt that plaintiff can prove no set of facts warranting a recovery." *Id.*, citing *O'Brien v. Univ. Community Tenants Union*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus.

{¶ 22} "A motion to dismiss based upon a statute of limitations may be granted only when the complaint shows conclusively on its face that the action is time-barred." *LGR Realty, Inc. v. Frank & London Ins. Agency*, 152 Ohio St.3d 517, 2018-Ohio-334, 98 N.E.3d 241, ¶ 10, citing *Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio St.2d 376,

433 N.E.2d 147 (1982), paragraph three of the syllabus. However, in deciding motions to dismiss, courts may also consider materials referenced or incorporated in a complaint. *State ex rel. Crabtree v. Franklin Cty. Bd. of Health*, 77 Ohio St.3d 247, 249, 673 N.E.2d 1281 (1997) fn.1. *Accord Thomas v. Progressive Cas. Ins. Co.*, 2011-Ohio-6712, 969 N.E.2d 1284, ¶ 9 (2d Dist.). Consequently, in reviewing the dismissal, we will consider the federal decisions that Jordan attached to her complaint.

{¶ 23} Orders granting Civ. R. 12(B)(6) motions to dismiss are reviewed under a de novo standard of review. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. This means that we conduct an independent review, giving no deference to the trial court's decision on matters of law. *Boyd v. Archdiocese of Cincinnati*, 2d Dist. Montgomery No. 25950, 2015-Ohio-1394, ¶ 13, citing *Ament v. Reassure Am. Life Ins. Co.*, 180 Ohio App.3d 440, 2009-Ohio-36, 905 N.E.2d 1246, ¶ 60 (8th Dist.).

B.   Discussion

{¶ 24} The trial court dismissed the claims for negligence/recklessness, civil conspiracy, and survivorship because they were not filed within the statute of limitations. Specifically, the court concluded that the statute of limitations for assault and battery should apply to these claims because they sounded in assault and battery. Decision (June 15, 2021), at p. 2-3.

{¶ 25} The statute of limitations for filing a lawsuit based on assault and battery is one-year after the date on which the assault or battery occurred. R.C. 2305.111(B)(1). The statute of limitations for bodily injury claims based on negligence is two years. R.C.

2305.10(A); *Love v. City of Port Clinton*, 37 Ohio St.3d 98, 524 N.E.2d 166, (1988). After reviewing the record and applicable law, we reject Jordan's claim that the longer two-year statute of limitations applied to the civil conspiracy, negligence/recklessness and survivorship claims.

{¶ 26} The trial court specifically stated in its decision that Jordan had "not disputed, as argued by Defendants, that the survivorship claims in this case, including negligence-reckless conduct and civil conspiracy, are sounded in assault and battery and are subject to the one-year statute of limitations set forth in R.C. 2305.111(B)." Decision, (June 15, 2021), at p. 4-5.

{¶ 27} The court was correct. During the lower court proceedings, Jordan argued only that her complaint was timely because it was filed within one year after the Sixth Circuit had affirmed the district court's decision. *See* Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss (May 6, 2021), p. 11-13, and Plaintiff's Surreply in Opposition to Defendant's Motion to Dismiss Complaint (May 17, 2021).

{¶ 28} A long-established legal principle is that appellate courts "will not consider any error which could have been brought to the trial court's attention, and hence avoided or otherwise corrected." *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 210, 436 N.E.2d 1001 (1982). An exception exists for plain error, where "but for the error, the outcome of the trial clearly would have been otherwise." *State v. McKee*, 91 Ohio St.3d 292, 294, 744 N.E.2d 737 (2001). However, in civil appeals, "the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby

challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.

{¶ 29} Our review of the record discloses no such error. The Supreme Court of Ohio has held that "in determining which limitation period will apply, courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded. The grounds for bringing the action are the determinative factors, the form is immaterial." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984). The court has also said that "[w]here the essential character of an alleged tort is an intentional, offensive touching, the statute of limitations for assault and battery governs even if the touching is pled as an act of negligence. To hold otherwise would defeat the assault and battery statute of limitations. Nearly any assault and battery can be pled as a claim in negligence*." Love*, 37 Ohio St.3d at 99, 524 N.E.2d 166. Thus, in *Love*, the court found allegations that an officer " 'negligently and recklessly subdued and handcuffed' " a suspect " 'using improper police procedures and methods which resulted in personal injury' " was governed by the statute of limitations for assault and battery. *Id.* at 99-100.

{¶ 30} Here, regardless of the complaint's characterization of the claims, whether as survivorship or negligence/recklessness, the gist was an action for assault and battery arising out of the use of force against McShann.

{¶ 31} Furthermore, a civil conspiracy claim "requires proof of 'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damage.' " *Kimmel v. Lowe's, Inc.*, 2d Dist. Montgomery No. 23982, 2011-Ohio-28, ¶ 20, quoting *Kenty v. Transamerica Premium*

*Ins. Co.*, 72 Ohio St.3d 415, 419, 650 N.E.2d 863 (1995). " 'A claim for conspiracy cannot be made [the] subject of a civil action unless something is done which, in the absence of the conspiracy allegations, would give rise to an independent cause of action.' " *Davis v. Clark Cty. Bd. of Commrs.*, 2013-Ohio-2758, 994 N.E.2d 905, ¶ 20 (2d Dist.), quoting *Cully v. St. Augustine Manor*, 8th Dist. Cuyahoga No. 67601, 1995 WL 237129, *4 (April 20, 1995). "In other words, '[a]n underlying unlawful act is required before a civil conspiracy claim can succeed.' " *Id.* (Other citation omitted.) As a result, "the applicable statute of limitations for filing a civil conspiracy is the relevant limitations statute for the underlying cause of action." *Id.*

{¶ 32} Again, the underlying cause of action was for assault and battery, and the statute of limitations for civil conspiracy would also be the one-year statute applied to that claim. Accordingly, the trial court did not commit plain error in applying the one-year statute of limitations to the reckless/negligence, survivorship, and civil conspiracy claims.

{¶ 33} As indicated, McShann's death occurred on October 20, 2017, and the federal action involving both federal and state law claims was filed on March 20, 2018, which was clearly within the one-year time limit for assault and battery. Under 28 U.S.C. 1367(a), federal district courts may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

{¶ 34} However, 28 U.S.C. 1367(c)(3) allows federal courts to decline supplemental jurisdiction where the court dismisses all the federal claims over which it has original jurisdiction. That is what occurred here. This is consistent with federal

policy, which holds that "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir.1996). As noted, the district court dismissed Jordan's state laws claims without prejudice on February 18, 2020.

{¶ 35} Pertinent to such situations, 28 U.S.C. 1367(d) provides that:

The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

{¶ 36} In interpreting 28 U.S.C. 1367(d), some Ohio courts had adopted the "extension approach," which " 'treats that period in the statute – the federal claim period plus thirty days – as a single span of time. If the state limitations period runs out during that span, the thirtieth day after dismissal becomes the new filing deadline. * * * If, however, the state limitations period does not run out during that span of time, the state limitations period is unaffected and terminates without regard to any federal court filings.' " *Smith v. Erie Cty. Sheriff's Dept.*, 2016-Ohio-543, 59 N.E.3d 725, ¶ 16 (6th Dist.), quoting *In re Vertrue Inc. Marketing and Sales Practices Litigation*, 719 F.3d 474, 481 (6th Cir.2013). Courts have also used two other methods: the "stop-the-clock" approach, during which the statute of limitations is suspended prior to dismissal of the federal action, or a "grace period" approach, which simply allows plaintiffs to refile in state court so long as they do so within 30 days after the federal action is dismissed. *Id.*, citing *Vertrue*.

{¶ 37} Recently, however, the United States Supreme Court resolved the competing approaches and held that "§ 1367(d)'s instruction to 'toll' a state limitations period means to hold it in abeyance, i.e., to stop the clock." *Artis v. D.C.*, ___ U.S. ___, 138 S.Ct. 594, 598, 199 L.Ed.2d 473 (2018). The court's decision was primarily based on the following factors: (1) the ordinary meaning of "tolling" in the context of statutory time prescriptions as pausing the progression of time; (2) the fact that legislative provisions generally have not ascribed grace period meanings to the word "tolled"; (3) the lack of the court's own judicial decisions (except one) that had used tolling language to describe grace periods; and (4) the language of the statute itself. *Id.* at 601-604. Accordingly, the court held that 28 U.S.C. 1367(d) "suspends the statute of limitations for two adjacent time periods: while the claim is pending in federal court and for 30 days postdismissal. * * * That is, the limitations clock stops the day the claim is filed in federal court and, 30 days postdismissal, restarts from the point at which it had stopped." *Id.* at 603.

{¶ 38} As noted, 28 U.S.C. 1367(d) provides for a 30-day limit "unless State law provides for a longer tolling period." Concerning this provision, the United States Supreme Court observed in *Artis* that a plaintiff "would have the benefit of § 1367(d)'s 30-days-to-refile prescription, or such longer time as state law prescribes." *Id.* at 606.

{¶ 39} As pertinent here, Ohio's savings statute, R.C. 2305.19(A), states that:

In any action that is commenced or attempted to be commenced, * * * if the plaintiff fails otherwise than upon the merits, the plaintiff or, if the plaintiff dies and the cause of action survives, the plaintiff's representative may commence a new action within one year after * * * the plaintiff's failure

otherwise than upon the merits or within the period of the original applicable statute of limitations, *whichever occurs later*.

(Emphasis added.)

{¶ 40} Applying these principles to the case before us, Jordan's cause of action arose on October 17, 2017. Normally, the statute of limitations would have expired within one year after that date.

{¶ 41} On March 20, 2018, when Jordan filed in federal court, 152 days had elapsed. The clock was then tolled until February 3, 2020, when the district court dismissed Jordan's supplemental state law claims without prejudice. At that point (as the trial court noted), Jordan had 243 days left within to file, which included the remaining 213 days left on the original one-year statute of limitations for assault and battery and the 30-days allowed by 28 U.S.C. 1367(d). This required Jordan to refile her action in state court by October 18, 2020. Alternatively, applying the longer 12-month period in Ohio's savings statue, Jordan had until February 4, 2021 to refile. However, Jordan failed to do so until March 9, 2021, which was clearly untimely.

{¶ 42} We note that while 28 U.S.C. 1367(d) refers to a "tolling period," the Supreme Court of Ohio has said that "R.C. 2305.19(A) neither operates as a statute of limitations nor operates to toll the statute of limitations." (Citations omitted.) *Wilson v. Durrani*, 164 Ohio St.3d 419, 2020-Ohio-6827, 173 N.E.3d 448, ¶ 18. Thus, one might argue that 28 U.S.C. 1367(d) does not apply. However, in *Wilson*, the court went on to comment that R.C. 2305.19(A) rather "provides a plaintiff with a limited period of time in which to refile a dismissed claim by commencing a new action that would otherwise be barred by the statute of limitations." *Id.*, citing *Internatl. Periodical Distribs. v. Bizmart,*

*Inc.*, 95 Ohio St.3d 452, 2002-Ohio-2488, 768 N.E.2d 1167, ¶ 7.

{¶ 43} For purposes of the analysis here, how the savings statute is described is irrelevant. Whether it is labeled as a tolling period or as a time to commence a new action does not affect its application in the context of this case. Nonetheless, we need not decide this point, because under either scenario, Jordan's refiled action was untimely with respect to the claims for assault and battery, negligence/recklessness, survivorship, and civil conspiracy. This leaves the wrongful death claim, which has a two-year statute of limitations, and was timely-filed. R.C. 2125.02(D)(1). We will address that claim in the context of collateral estoppel.

{¶ 44} As noted, Jordan's final argument is that the trial court erred by failing to calculate the limitations period from the date the Sixth Circuit Court of Appeals issued its decision affirming the district court's decision (February 3, 2021). According to Jordan, this would result a timely refiling, because the one-year statute of limitations would not have expired until October 5, 2021, under 28 U.S.C. 1367(d), or until February 3, 2022, if R.C. 2305.19(A) applied.

{¶ 45} In our opinion, Jordan's position is contrary to the wording of 28 U.S.C. 1367(d), which tolls the period of limitation "while the claim is pending and for a period of 30 days after it *is dismissed* * * *." An appellate court like the Sixth Circuit Court of Appeals does not dismiss claims; instead, as here, it affirms the lower court's dismissal of the claims.

{¶ 46} Furthermore, Jordan has not cited any decisions in which 28 U.S.C. 1367(d) has been applied in the manner she suggests. Rather, she cites a case from the Supreme Court of Ohio which indicates that cases are "pending and the effect of the trial

court's judgment is suspended until it enters its own final judgment."  Appellant's Brief, p. 23, citing *Maynard v. Eaton Corp.*, 119 Ohio St.3d 443, 2008-Ohio-4542, 895 N.E.2d 145, ¶ 13.   Under this theory, the district court's dismissal was "pending" and was not final until affirmed by the court of appeals – meaning that the limitations period should be calculated from the latter date.

**{¶ 47}** It is true that in *Maynard,* the court stated that " ' "an action or suit is 'pending' from its inception until the rendition of final judgment." ' "  *Id.*, quoting *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 103, 522 N.E.2d 489 (1988), which in turn quotes *Black's Law Dictionary* 1021 (5th Ed.1979).   However, *Maynard* involved application of appropriate rates of interest on final judgments, which is not pertinent here.

**{¶ 48}** Nonetheless, even if *Maynard* were relevant, our first task in interpretation is to "look to the plain language of the statute itself to determine the legislative intent." *Hubbell v. City of Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 11, citing *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81, 676 N.E.2d 519 (1997). "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation.   An unambiguous statute is to be applied, not interpreted."  *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus.   *Accord Ohio Renal Assn. v. Kidney Dialysis Patient Protection Amendment Committee*, 154 Ohio St.3d 86, 2018-Ohio-3220, 111 N.E.3d 1139, ¶ 23.

**{¶ 49}** We see nothing ambiguous about 28 U.S.C. 1367(d) in this regard.   It clearly connects a "pending" claim to its "dismissal."   Consequently, the appropriate time for calculating the limitations period is from the district court's dismissal of the action.

**{¶ 50}** Jordan's other argument is based on policy, i.e., that judicial resources are wasted by requiring actions to be refiled in state court while pending appeals in federal court might be successful and might reinstate the dismissed state supplemental claims. However, if that is a concern, a state court action could be stayed until the federal appeal ends. Again, the statute's wording is clear, and our duty is to apply it as written, not to impose our own policy considerations.

**{¶ 51}** Based on the preceding discussion, the second assignment of error is without merit and is overruled. As indicated, we will now consider the application of collateral estoppel to the only remaining claim, which is for wrongful death.

## II.   Application of Collateral Estoppel

**{¶ 52}** Jordan's first assignment of error states that:

The Trial Court Erred as a Matter of Law in Dismissing Plaintiff's Claims Based on Collateral Estoppel.

**{¶ 53}** Under this assignment of error, Jordan contends that the trial court made several erroneous conclusions, the first of which was that the state law issues, including whether the officers acted recklessly, were the same as those involved in the federal litigation. Before we consider this point, we will outline the standards to be applied to res judicata and collateral estoppel, while bearing in mind the standards relevant to motions to dismiss.

## A.   Res Judicata

**{¶ 54}** In Ohio, "[t]he doctrine of res judicata encompasses the two related

concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, ¶ 6, citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381, 653 N.E.2d 226 (1995). "The doctrine of issue preclusion, also known as collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." (Citations omitted.) *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395, 692 N.E.2d 140 (1998).

{¶ 55} "While the merger and bar aspects of res judicata have the effect of precluding the relitigation of the same cause of action, the collateral estoppel aspect precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action that was based on a different cause of action. * * * 'In short, under the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit.' " *Id.*, quoting *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 112, 254 N.E.2d 10 (1969), *overruled on other grounds, Grava,* at syllabus. "If the same evidence would sustain both issues, then the two issues are the same for purposes of applying collateral estoppel." *Id.* at 396, citing *Norwood v. McDonald*, 142 Ohio St. 299, 52 N.E.2d 67 (1943), paragraph four of the syllabus, *overruled on other grounds, Grava,* at syllabus.

{¶ 56} "As a general rule, in order for the principle of res judicata to be applicable,

the parties to the subsequent action must be identical to those of the former action or be in privity with them." *Johnson's Island, Inc. v. Bd. of Twp. Trustees of Danbury Twp.*, 69 Ohio St.2d 241, 244, 431 N.E.2d 672 (1982).

## B. Discussion

{¶ 57} In the case before us, Jordan does not challenge the identity of parties, nor could she, since all the parties named here were also involved in the federal action. However, Jordan does contend that the issues are different, because her claims of recklessness/negligence, assault and battery, civil conspiracy, survivorship, and wrongful death are not identical to the issue of the reasonableness of excessive force that the federal action decided.

{¶ 58} As an initial point, the only claim we need to consider is wrongful death, because the other claims are time-barred. In discussing this claim, the trial court outlined the law regarding wrongful death actions, sovereign immunity, and collateral estoppel. Decision (June 15, 2021), at p. 10-19. Then, after reviewing both federal court decisions, the trial court found that the same evidence would prove the underlying facts in both proceedings, and that collateral estoppel precluded relitigation of the officers' conduct because the federal courts had held that the officers had acted in an objectively reasonable manner. *Id.* at p. 19-22. Again, because this case was resolved by a motion to dismiss, we review the trial court's decision on a de novo basis. *Perrysburg Twp.*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, at ¶ 5.

{¶ 59} As indicated, in challenging the trial court's decision, Jordan contends that the issue of recklessness, as raised in this action, is not identical to the issue of whether

the officers' use of force was reasonable. Jordan also argues that the trial court used conflicting definitions of recklessness and improperly included a definition involving a "perversity" standard that the Supreme Court of Ohio has rejected. Appellant's Brief at p. 12, citing *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266. Before considering these points, we will briefly discuss the relevant law.

1. Wrongful Death

{¶ 60} "An action for wrongful death affords a civil remedy which compensates others for the death of a person caused by the wrongful act, neglect, or default of a third person." *Monnin v. Fifth Third Bank of Miami Valley, N.A.*, 103 Ohio App.3d 213, 228, 658 N.E.2d 1140 (2d Dist.1995).

{¶ 61} "In order to prevail in a wrongful death cause of action, the personal representative of the decedent must prove these elements: "1) a wrongful act, neglect or default of defendant which proximately caused the death and which would have entitled the decedent to maintain an action and recover damages if death had not ensued; 2) that a decedent was survived by a spouse, children, parents, or other next of kin; and 3) that the survivors suffered damages by reasons of the wrongful death." *Bishop v. Nelson Ledges Quarry Park, Ltd.*, 11th Dist. Portage No. 2004-P-0008, 2005-Ohio-2656, ¶ 19, citing McCormac, *Wrongful Death in Ohio*, Section 2.02. Where the action is based on negligence, "a plaintiff must show (1) the existence of a duty owing to plaintiff's decedent, i.e., the duty to exercise ordinary care, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death." *Bennison v. Stillpass Transit Co.*, 5 Ohio St.2d 122, 214 N.E.2d 213 (1966), paragraph one of the syllabus. Of course, where liability of employees of political subdivisions is involved, additional standards

apply. In other words, negligence alone is insufficient.

### 2. Immunity of Political Subdivisions and Employees

{¶ 62} For purposes of deciding political subdivision immunity under R.C. Chap. 2744 for injuries to others, courts employ a three-tier analysis. *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 15. "The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. * * * However, that immunity is not absolute." *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 7, citing R.C. 2744.02(B) and *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 697 N.E.2d 610 (1998).

{¶ 63} "The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability." *Id*. at ¶ 8. Third, "[i]f any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability." *Id.* at ¶ 9.

{¶ 64} Jordan did not sue the City of Moraine in either federal or state court. Instead, she sued only the individual police officers who were involved in the incident leading to McShann's death. As a result, the three-tiered analysis does not apply. In situations involving the immunity of individual subdivision employees, "R.C. 2744.03(A)(6) states that an employee is immune from liability unless the employee's actions or omissions are manifestly outside the scope of employment or the employee's official

responsibilities, the employee's acts or omissions were malicious, in bad faith, or wanton or reckless, or liability is expressly imposed upon the employee by a section of the Revised Code." *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9, ¶ 17.

{¶ 65} There was no question here that Defendants were engaged in a government function and that their actions were within the scope of their official duties. The issue here concerned the allegation that Defendants were reckless, and whether the prior federal court findings collaterally estopped Jordan from relitigating that point.

### 3. The Recklessness Standard

{¶ 66} In *Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, the Supreme Court of Ohio discussed certain confusion that had arisen about its prior definitions of the terms "wanton," "willful," and "reckless." The court stressed that these terms were not "equivalent standards." *Id.* at ¶ 31. As here, *Anderson* involved claims against political subdivision employees (firefighters), but also involved claims against their employer, a city. *Id.* at ¶ 1-2. In that case, the trial court granted summary judgment to the defendants, but the court of appeals reversed, finding that "the willful or wanton misconduct referred to in R.C. 2744.02(B)(1)(b) is the functional equivalent of recklessness." *Id.* at ¶ 3. On further appeal, the Supreme Court of Ohio disagreed, emphasizing, as noted, that these terms are different. Nonetheless, the court affirmed the court of appeals and remanded the case so that the trial court could decide, based on the court's clarification, if the city had a defense to liability and if the firefighters should

receive immunity.   *Id.*[1]

{¶ **67**} *Anderson* described recklessness as follows:

Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct.   *Thompson* [*v. McNeill*], 53 Ohio St.3d [102] at 104-105, 559 N.E.2d 705 [(1990)], adopting 2 Restatement of the Law 2d, Torts, Section 500, at 587 (1965); *see also Black's Law Dictionary* 1298-1299 (8th Ed.2004) (explaining that reckless conduct is characterized by a substantial and unjustifiable risk of harm to others and a conscious disregard of or indifference to the *risk*, but the actor does not desire harm).

(Emphasis sic.)   *Id.* at ¶ 34.

{¶ **68**} In its decision, the trial court did not cite *Anderson*, but it did state the correct standard for reckless conduct.   Decision (June 15, 2021), at p. 16.   The court then reiterated the correct standard while quoting from *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 73.   *Id.*   However, the court did include the statement from *O'Toole* that " 'in the context of R.C. 2744.03(A)(6), recklessness is a perverse disregard of a known risk.' "   *Id.*   This particular standard was not part of the definition of "recklessness" in *Anderson*, and one court has concluded that it is not part of

---

[1] After the remand and then a further appeal, the court of appeals ultimately concluded that there were genuine issues of material fact concerning whether the firefighters' actions were wanton, and therefore negated the city's defense, and about whether the firefighters had acted recklessly for purposes of their own immunity.   *Anderson v. Massillon*, 5th Dist. Stark No. 2013CA00144, 2014-Ohio-2516, ¶ 59-60 and 69, *appeal not accepted for review*, 140 Ohio St.3d 1521, 2014-Ohio-5251, 20 N.E.3d 730. The case was again remanded to the trial court, and there is no further history.

the definition. *See Wilson v. Gregory*, 3 F.4th 844, 861 (6th Cir.2021) (noting that *Anderson* had "stepped away" from the perverse disregard terminology used in *O'Toole* and other Ohio court cases). *But see Meyers v. Cincinnati Bd. of Edn.*, 983 F.3d 873, 882 (6th Cir.2020) (applying the definition from *O'Toole*).

{¶ 69} On the other hand, lower courts in Ohio have continued to include "perverse disregard of a known risk" or similar language. *E.g., Fediaczko v. Mahoning Cty. Children Servs.*, 7th Dist. Mahoning No. 11 MA 186, 2012-Ohio-6090, ¶ 21; *Webber v. Lazar*, 2d Dist. Montgomery No. 26188, 2015-Ohio-1942, ¶ 13 (commenting that "summary judgment remains appropriate where a defendant's conduct fails to demonstrate a disposition to perversity"); *Moore v. City of Cleveland*, 2017-Ohio-1156, 87 N.E.3d 858, ¶ 42-43 (8th Dist.). And, in fact, the Supreme Court of Ohio itself has continued to use this phrase when defining recklessness. Very recently, the court stated that "[i]n applying R.C. 2744.03(A)(6)(b), this court has defined 'recklessness' as 'a perverse disregard of a known risk.' " *A.J.R. v. Lute*, 163 Ohio St.3d 172, 2020-Ohio-5168, 168 N.E.3d 1157, ¶ 17, quoting *O'Toole* at paragraph three of the syllabus.

{¶ 70} In light of the above discussion, we are not convinced that *Anderson* either specifically rejected the "perverse disregard" standard or that the trial court erred in referencing it. Furthermore, even if we believed otherwise, we see no impact in the context of the case before us.

{¶ 71} The trial court concluded that collateral estopped applied because the same evidence would sustain both the state issue and the issue litigated in federal court. We agree. The underlying facts are the same if the issue were phrased as whether the officers acted recklessly or if it were phrased as whether the officers acted reasonably for

purposes of qualified immunity. Notably, "collateral estoppel prohibits relitigation of "a fact or a point that was actually and directly at issue in a previous action." *Fort Frye Teachers Assn.,* 81 Ohio St.3d at 395, 692 N.E.2d 140.

{¶ 72} Here, the federal district court granted summary judgment to the police officers on the basis of qualified immunity, finding that "their conduct was objectively reasonable and did not violate clearly established law." *Jordan I*, 440 F.Supp.3d at 857. The court also stressed that "[t]he use of deadly force by a police officer is justified 'when the factual situation revealed a perceived serious threat of physical harm to the officer or others in the area from the perspective of a reasonable officer.' " *Id.*, quoting *Sample v. Bailey*, 409 F.3d 689, 697 (6th Cir.2005). As indicated previously, the federal case was resolved on summary judgment, and the parties had a full opportunity to litigate.

{¶ 73} On further appeal, the Sixth Circuit Court of Appeals affirmed the district court's summary judgment. In summarizing the facts, the court of appeals observed that:

> During the early morning hours of October 20, 2017, Jamarco McShann was asleep in the driver's seat of a locked, running car with his right hand resting on a pistol in his lap and music blaring from the car stereo. Just seconds after police officers roused him from his slumber, McShann stopped complying with their orders that he keep his hands up and away from the gun. He instead reached down, grabbed the gun, and swung it towards the driver-side door, where two officers were positioned. Fearing for their safety and that of their fellow officers, Officers Jerry Knight and John Howard opened fire, shooting and killing McShann.

*Jordan II*, 987 F.3d at 539.

**{¶ 74}** After discussing the evidence in detail, including the officers' testimony and Jordan's expert report, the Sixth Circuit Court of Appeals stated that:

The record here demonstrates the defendant officers' use of deadly force was objectively reasonable. Three of the four officers surrounding McShann's vehicle testified that when McShann woke, he was compliant or mostly compliant with their order that he put his hands up. (Officer O'Neal testified that he was not sure whether McShann put his hands up.) But then, after looking back and forth at the officers surrounding the vehicle for a few seconds, all four officers testified that McShann grabbed his gun. At this point, Officer Howard perceived a serious and deadly threat to himself and his fellow officers and took aim at McShann's "center mass"— necessarily taking his vision away from the gun itself. While that process was playing out, the other three officers agree that McShann "swung" the gun towards Officer Knight at the driver-side window. Officer Knight testified that he feared for his safety once McShann swung the gun towards him. At that point, both Officers Knight and Howard used deadly force.

Given these unrebutted facts, we conclude that both Officers Howard and Knight acted reasonably to stop a serious threat of deadly force, and the district court correctly granted them qualified immunity. In other words, when an initially compliant suspect stops following officer commands and instead grabs a readily accessible firearm, an officer "need not wait for [the] suspect to open fire on him ... before the officer may fire back." *Greathouse v. Couch*, 433 F. App'x 370, 373 (6th Cir. 2011); cf. *Mullins v.*

*Cyranek*, 805 F.3d 760, 768 (6th Cir. 2015) (affirming grant of qualified immunity where officer used deadly force in response to a suspect pulling out a previously concealed weapon and throwing it over the officer's shoulder, because the suspect earlier "had his finger on the trigger of a gun, and at that time, he posed a serious threat to [the officer] and the general public"); *id.* ("This is not a case where a jury could conclude that [the police officer] was not in any danger in the first place." (internal quotation marks, brackets, and citation omitted)).

*Jordan II*, 987 F.3d at 543-544.

{¶ 75} In view of the findings in the federal district and appellate courts that the officers' use of deadly force (resulting in McShann's death) was reasonable, and that they did not violate established law, it would be factually and logically inconsistent to conclude in this action that the officers were reckless in causing McShann's death and, therefore, were not entitled to immunity under R.C. 2744.03(A)(6). Accordingly, the trial court did not err in applying collateral estoppel to the wrongful death claim brought by Jordan. As a result, the first assignment of error is without merit and is overruled.

## IV. Conclusion

{¶ 76} Both of Jordan's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

Jacqueline Green
M. Caroline Hyatt
Sarah Gelsomino
Kelly M. Schroeder
Hon. Mary Katherine Huffman